## THE STATE v. WEEDEN, *Appellant.*

### Division Two, March 3, 1896.

1. **Criminal Practice**: FORMAL ARRAIGNMENT: WAIVER. Where defendant appears in person and by counsel and enters his plea of not guilty to the indictment, he thereby waives a formal arraignment.

2. ———: DISQUALIFICATION OF SHERIFF: ELISOR: JURORS. Where an elisor has been appointed to summon a jury because the sheriff is disqualified, it is error for the court to call the regular panel which had previously been summoned by the sheriff.

State v. Weeden.

3. ——: ——: ——: ——: CHALLENGE TO THE ARRAY.   An objection to the regular panel, after they had been called into the jury box, for the reason that they had not been summoned by the elisor, is a challenge to the array and not to the polls.

4. ——: PRESENCE OF DEFENDANT: PRESUMPTION: STATUTE.   Where the record shows defendant's presence on several occasions during his trial, it will be presumed that he was present when the verdict was rendered.   (R. S. 1889, sec. 4191.)

5. ——: DEFENDANT AS WITNESS: EVIDENCE.   Where the defendant in a criminal case testifies in his own behalf, testimony as to his general moral character among his neighbors is competent as affecting his credibility; its weight being for the jury.

6. ——: MALICE: INSTRUCTIONS.   Malice in common acceptation means ill-will against a person, but in its legal sense it means a wrongful act done intentionally without just cause or excuse; and instructions given by the courts should conform to the foregoing definition.

7. ——: DEFENDANT'S GENERAL REPUTATION: INSTRUCTION.   It is proper to instruct the jury on a criminal trial that the evidence of defendant's reputation for morality and truth is restricted to his credibility as a witness and is no evidence of his guilt.

8. ——: DEADLY WEAPON: INSTRUCTIONS.   Where in its first instruction the court submits to the jury the question whether a knife used by defendant was a dangerous and deadly weapon, it need not be submitted in other instructions.

*Appeal from Polk Circuit Court.*—HON. ARGUS COX, Judge.

REVERSED AND REMANDED.

*Rechow & Pufahl* for appellant.

(1) The record fails to show an arraignment and the conviction can not stand. *State v. Williams,* 117 Mo. 379; *State v. Walker,* 119 Mo. 468. (2) The record must show that what took place amounted to an arraignment. *Fitzpatrick v. People,* 98 Ill. 260; *Lynch v. Commonwealth,* 88 Pa. 193; *Ray v. People,* 6 Colo. 231. (3) An arraignment consists in reading the indictment to the defendant and asking him whether

he is guilty or not guilty of the offense charged therein. 1 Bishop's Crim. Proc. [1 Ed.], sec. 412. (4) It was error for the court to call the jury; this duty devolved upon the proper officer. *State v. Hultz,* 106 Mo. 48; *State v. Wiley,* 109 Mo. 444. (5) Defendant's challenge to the array should have been sustained. *State v. Smith,* 90 Mo. 41; R. S. 1889, sec. 8188. (6) Defendant's challenge to jurors summoned by the sheriff and his deputies since the beginning of the term of court should have been sustained. *People v. Felker,* 61 Mich. 114. (7) The record fails to show that the defendant was present when the jury returned the verdict and the case will have to be reversed for that reason. R. S. 1889, sec. 4237; *French v. State,* 55 N. W. Rep. 568; *State v. Jones,* 61 Mo. 235; *State v. Buckner,* 25 Mo. 172; *State v. Able,* 65 Mo. 38. (8) The admission of Isaac Gregg's testimony as to what he was told and saw the day after the difficulty was highly prejudicial, and the cause should be reversed for that reason. And the testimony as to defendant's moral character should, under the circumstances, not have been admitted, as it was shown that it related to his occasionally taking a drink and getting under the influence of liquor. (9) The third instruction given on the part of the state does not define malice as approved by this court. It entirely omits the fact that the act must be wrongful and intentionally done. *State v. Schoenwald,* 31 Mo. 157; *Buckley v. Knapp,* 48 Mo. 160; Sharswood's Blackstone, book 4, p. 198; Anderson's Law Dict., p. 648. (10) The fifth instruction is not the law; it entirely ignores the purpose for which defendant entered into the difficulty. Even if he entered into it voluntarily (which the evidence fails to show), it must further appear that it was with the intent to commit a felony. *State v.*

*Smith*, 125 Mo. 2; *State v. Lewis*, 118 Mo. 84; *State v. Gilmore*, 95 Mo. 554; *State v. Davidson*, 95 Mo. 155; *State v. Partlow*, 90 Mo. 608. (11) The motion for new trial should have been sustained for various reasons therein stated. It should have been sustained for the reason that juror W. E. Loafman had formed and expressed an opinion before he was impaneled. *State v. Taylor*, 64 Mo. 361; *State v. Burnside*, 37 Mo. 347; *State v. Wyatt*, 50 Mo. 309; *U. S. v. Fries*, 3 Dall. 515; *State v. Hultz*, 106 Mo. 48; *State v. Gonce*, 87 Mo. 629; *Graham v. State*, 13 S. W. Rep. (Tex.) 1010; *Washburn v. State*, 20 S. W. Rep. (Tex.) 715.

*R. F. Walker*, attorney general, and *Morton Jourdan*, assistant attorney general, for the state.

(1) Defendant was formally arraigned. If he had not been, his pleas of not guilty waived the necessity of arraignment. *State v. Grate*, 68 Mo. 22; *State v. Saunders*, 53 Mo. 234; *State v. Braunschweig*, 36 Mo. 397. (2) It is not a substantial ground for reversal that an elisor appointed by the court after the sheriff had been disqualified, summoned persons as jurors who had been summoned by the sheriff, unless it appears that such jurors so summoned were incompetent or unfit to sit as triers of the case. *State v. Wiley*, 109 Mo. 439. Besides, the challenge was not to the array but to the polls, and the attempted challenge to the array was thereby waived. *State v. Clark*, 26 S. W. Rep. 562. (3) The record proper, although imperfectly preserved, shows the presence of the defendant during each day of the trial. A record showing the presence of the prisoner at the beginning of each day will be held sufficient. *State v. Yerger*, 86 Mo. 33; *State v. Lewis*, 69 Mo. 92. The record shows the presence of the prisoner on the morning of the day when the ver-

dict was rendered.   This is sufficient.   *State v. Bickel*, 7 Mo. App. 571.  (4) It was competent for a witness who had visited the scene of the difficulty to describe the appearance of the ground, the tracks and other indications of a conflict.   Physical facts are often the most convincing testimony.   *State v. Crow*, 107 Mo. 341; *State v. Buchler*, 103 Mo. 203; *State v. Weiners*, 66 Mo. 11.  (5) Collateral facts may be given in evidence if they are so connected with the main fact as to be necessary to its proper explanation. *State v. Earnest*, 70 Mo. 520.  (6) In the following cases it was held that testimony as to tracks and other evidence of physical facts might be given by persons who had visited and examined the scene of the crime.   *Clark v. State*, 26 S. W. Rep. (Tex.) 68; *Pilcher v. State*, 25 S. W. Rep. (Tex.) 24; *Com. v. Pope*, 103 Mass. 440; *State v. Reitz*, 83 N. C. 634.  (7) The definition of "malice" as given by the court in the third instruction for the state is in the form repeatedly approved by this court.   *State v. Gee*, 85 Mo. 649.   The instructions taken and construed together as they should be, correctly declare the law and are therefore not subject to substantial objection.   *State v. Berkley*, 109 Mo. 665.

BURGESS, J.—This is an appeal by defendant from a judgment of the Polk circuit court, whereby he was sentenced to imprisonment for two years in the penitentiary, upon the verdict of a jury in that court finding him guilty of feloniously assaulting, cutting, and stabbing with a knife, a deadly weapon, with intent to kill, one B: B. Temple, and fixing his punishment as above indicated.

On the eighteenth day of May, 1894, Temple was ploughing in his field, and defendant, passing near by, stopped to see him about the payment for some posts, which Temple had gotten from one Whitney,

and which defendant claimed were his. Defendant testified that he was passing near by, when Temple called to him to come over, and that he went to where Temple was, in obedience to his call. This was denied by Temple, who testified that he did not see defendant until he was within a short distance of him. When they got near each other, after a few preliminary remarks, they began talking about the posts, which resulted in Temple being cut and stabbed with a knife in thirteen different places, twice to the hollow of the body. The evidence was somewhat conflicting as to who was the aggressor, but tended largely to show that defendant was. Defendant claimed to have acted in self-defense.

Over the objection and exception of defendant the court instructed the jury in behalf of the state as follows:

"1.  The court instructs the jury that if they believe from the evidence that the defendant at the county of Polk and state of Missouri, within three years next before the finding of the indictment in this case feloniously, on purpose, and of his malice aforethought, stabbed and cut B. B. Temple with a knife, with intent to kill said Temple, and that said knife was a deadly weapon, they should find defendant guilty and assess his punishment at imprisonment in the penitentiary for a period of not less than two years, nor more than ten years."

"3.  By the term 'malice aforethought' is meant that the act should have been thought of beforehand, for any length of time, however short, and that it was done maliciously. As used in the law, 'malice' does not mean mere spite or ill-will, but it means that condition of the mind that prompts a man to take the life of another, or do him some great bodily harm without just cause or excuse  'Feloniously' means wick-

edly and against the admonition of the law, that is, unlawfully.

"4. The court instructs the jury that the law presumes the defendant innocent until the state has proven his guilt beyond a reasonable doubt, but such a doubt to authorize an acquittal on that ground alone, should be a substantial doubt arising from a due consideration of all the facts and circumstances in evidence, and not a mere possibility of his innocence.

"5. You are instructed that if you believe from all the facts and circumstances in evidence that the defendant provoked, brought on, or voluntarily entered into a difficulty with B. B. Temple for the purpose, and with the intent of wreaking his vengeance upon said Temple, then and in that event the doctrine of self-defense does not apply in this case."

"7. The court instructs the jury that he who uses upon another at some vital part a deadly weapon of any kind must, in the absence of qualifying facts, be presumed to know that the effect is likely to be death, and knowing this must be presumed to intend death, which is the probable and ordinary consequence of such act; and if such deadly weapon is used without just cause, he must be presumed to do it wickedly or from a bad heart.

"If therefore the jury believe from the evidence in this case that the defendant willfully, feloniously, on purpose, and of his malice aforethought made an assault on one B. B. Temple, as charged in the indictment, by cutting and stabbing said Temple with a knife, in some vital part with a manifest design to use such weapon upon him, and without sufficient reason, cause, or extenuation, then it must be presumed that defendant intended to kill and murder said Temple."

The court gave the following instructions on part of the defendant:

"1.   The jury are instructed that the indictment in this case is a mere written accusation and is no evidence whatever of the defendant's guilt.

"2.   The jury are instructed that they are the sole and exclusive judges of the credibility of the witnesses and the weight of their testimony, and in weighing their testimony you have a right to consider his or her demeanor upon the stand; their manner of testifying; their interest in the case, and any contradictory statements they may have made either in or out of court; and if you believe that any witness has willfully sworn falsely to any material fact in issue, then you have a right to disregard any part or the whole and entire testimony of such witness."

The court gave the following instructions on its own motion over defendant's objection:

"2.   If you believe from the evidence beyond a reasonable doubt that the defendant, at the county of Polk and state of Missouri, at any time within three years before the filing of the indictment in the case, did stab and cut B. B. Temple with the felonious intent to kill said Temple, but without malice aforethought, you will find him guilty and assess his punishment at imprisonment in the penitentiary not less than two years nor more than five years, or imprisonment in the county jail not less than six months nor more than twelve months, or by fine of not less than $100 and imprisonment in the county jail not less than three months, or by fine of not less than $100.

"3.   If the jury believe that during the quarrel Temple assumed such attitude or appearance as under the circumstances to furnish defendant reasonable ground to apprehend a design to take his life or to do him some great bodily harm, and there was reasonable

ground to apprehend that such design was immediately about to be accomplished, and that he cut Temple to prevent him from accomplishing such design, then under the law the cutting was justifiable, although in fact such appearances were false and there was in fact neither design to do defendant any injury nor danger of its being done.

"4.   If the defendant had good reason to believe and did believe that Temple was about to take his life or do him some great bodily harm, then he had the right under the law to defend himself and to use whatever force that reasonably appeared to him at the time to be necessary for that purpose, even to the taking of the life of Temple."

"6.   The court instructs the jury that to entitle defendant to an acquittal on the ground of self-defense it must appear from the evidence that at the time he cut Temple he had reasonable cause to apprehend a design on the part of Temple to take his life, or do him some great bodily harm, and that there was imminent danger of such design on the part of Temple being immediately accomplished, and that it reasonably appeared to defendant at the time to be necessary to inflict the injuries on Temple, to save his own life, or prevent Temple from doing him some great bodily harm."

"8.   The evidence offered by the state as to the reputation of defendant for morality and truth and veracity is no evidence (in itself) of his guilt, but should only be considered by you as touching his credibility as a witness.

"9.   The court instructs the jury that the defendant is a competent witness in his own behalf and his testimony is to be received and weighed by the same rules as the testimony of any other witness.   In determining what weight you will give to his testimony you

may take into consideration the fact that he is the defendant on trial and his interest in the result of the trial.''

The court refused the following instructions asked by defendant:

''2. The jury are instructed that you must find the defendant guilty beyond a reasonable doubt, and that he is entitled to the benefit of any doubt upon every point that may arise in the case affecting his guilt.

''3. The defendant is presumed to be innocent until he is proven guilty beyond all reasonable doubt, and this presumption attends him throughout the whole trial. It never devolves upon the defendant to prove his innocence. In this case the defendant pleads self-defense, and if after a full and fair consideration of all the facts and circumstances in evidence you have a reasonable doubt as to whether the cutting was feloniously done, as charged in the indictment, or whether it was done because defendant believed from the attitude and appearance of said Temple that he was about to take his (defendant's) life or do him some great bodily harm, then the defendant is entitled to the benefit of such doubt, and you should acquit him.''

To the action of the court in refusing said instructions asked by defendant, he duly excepted.

I. The first assignment of error is that the record fails to show that defendant was arraigned before being put upon his trial.

On the sixth day of May, 1895, the following entry was made in said cause, viz.: ''Now comes the prosecuting attorney, also comes the defendant in his own proper person and by counsel, and the said defendant for his plea to said bill of indictment upon his formal arraignment pleads 'not guilty.' ''

''To arraign is nothing else but to call the prisoner to the bar of the court to answer the matter charged

upon him in the indictment." 4 Black, Com. 322; *Goodin v. State*, 16 Ohio St. 344. No technical arraignment, such as requiring the prisoner to hold up his hand, the reading over the indictment to him and asking him whether he be guilty or not guilty was necessary. The arraignment as shown by the record was a substantial compliance with the law and even if it were not, as the record also shows that defendant pleaded "not guilty" to the indictment, he thereby waived formal arraignment. *State v. Grate*, 68 Mo. 22; *State v. Braunschweig*, 36 Mo. 397; *State v. Saunders*, 53 Mo. 234.

II. The next objection is that the court assumed the province of the elisor, appointed by it for the special purpose of summoning a jury to try this case, by calling as jurors the regular panel which had theretofore been summoned by the sheriff, including eight additional jurors who had been summoned by said sheriff, during the term, to serve in the places of other persons who had been summoned, and failed to appear, were not found, or excused from service by the court.

The record shows that when the case was called for trial, the court, over the objection and protest of defendant, ordered the regular panel of jurors in the jury box, including the eight additional jurors, summoned by said sheriff during the term, none of whom, so far as appears, were ever summoned by the elisor, and that after thirty men, including said eight, had qualified, defendant made his challenge to the array which was overruled by the court.

The ground upon which the sheriff was disqualified was that he and his deputies were prejudiced against the defendant, one of his deputies a witness in the case, and would not summon an impartial jury to try his cause.

Under the circumstances it seems somewhat strange that the court itself should call into the jury box jurors who were known to have been summoned by an officer whom it had held to be disqualified, and whom it must have known were summoned by that officer, and *had not* been summoned by the elisor. The fact that the regular panel had been summoned by the sheriff was no barrier to any or all of them being summoned for this particular case by the elisor, and had this course been pursued the fact that they had been previously summoned by the sheriff would have been no valid ground of objection to them. *State v. Wiley*, 109 Mo. 439. But in calling them into the jury box, the court deprived defendant of any supposed benefit that he had the right to expect at the hands of a jury summoned by an impartial officer.

But the contention on the part of the state is, that the challenge was not to the array but to the polls, and the challenge to the array was thereby waived. When the court called all of the regular panel into the jury box, defendant objected and asked that the elisor be directed to summon the men from which the jury was to be selected, and after the thirty men had qualified as jurors, defendant further objected to the array of jurors for the reason that they had not been summoned by the elisor, an impartial officer. The objections were overruled, and defendant compelled to go to trial before a jury taken from a panel of thirty men called in the jury box under these circumstances. The challenge was first to the array, that is, to the jury as a whole, and not to the polls, as contended by counsel for the state.

In *State v. Clark*, 121 Mo. *loc. cit.* 513, Sherwood, J., in speaking for the court said: "And after a challenge to the array, the party may challenge the

polls; but after he has excepted to any of the individual jurymen, he can not object to the whole panel.''

It follows that the court erred, in failing to sustain defendant's challenge to the array.

III.   The record is very defective, and imperfect in very many particulars, and especially in that it does not show by affirmative entry that defendant was present in court at the time the jury returned their verdict. While section 4191, Revised Statutes, 1889, provides that no person indicted for a felony can be tried unless he be personally present during the trial, it also provides ''that when the record in the appellate [court] shows that the defendant was present at the commencement or any other stage of the trial, it shall be presumed in the absence of all evidence in the record to the contrary, that he was present during the whole trial.''   The record does affirmatively show that defendant was present on several different occasions during the trial, and the presumption must be indulged that he was present at the time the jury rendered their verdict.   *State v. Yerger*, 86 Mo. 33; *State v. Lewis*, 69 Mo. 92.

IV.   Nor was there reversible error committed in allowing Isaac Gregg, a witness for the state, to testify as to the condition of the ground where the difficulty occurred and the tracks of some person leading from that point in the direction of the graveyard the next day after the difficulty occurred.   At most this evidence was immaterial, and it is not conceived how it could have been prejudicial to defendant.

Nor was there error in permitting this witness to testify as to the general moral character of the defendant in the neighborhood in which he lived.   Defendant had testified as a witness in his own behalf, and evidence of his general moral character among his neighbors was proper as affecting his credibility, its weight

being for the consideration of the jury. *State v. Smith*, 125 Mo. 2.

V. The state's third instruction is criticised in that it does not correctly define malice. It is said in *State v. Schoenwald*, 31 Mo. 147, "the best definition of malice to be met with is that given by Justice BAYLEY, in *Bromage v. Brosser* [*Prosser*], 4 Barn. & Cres. 255." That definition is as follows: "Malice in common acceptation means ill will against a person, but in its legal sense it means a wrongful act, done *intentionally*, without just cause or excuse." See, also, *State v. Hays*, 23 Mo. 287.

Upon a retrial we would respectfully suggest that malice be defined in accordance with these adjudications, and thus make it plain and free from any possible objection.

VI. The criticism on the state's fifth instruction is without merit. The evidence was sufficient to authorize it, and it contains a correct presentation of the law as announced by this court, on different occasions. *State v. Smith*, 125 Mo. 2; *State v. Lewis*, 118 Mo. 79, and authorities cited.

VII. It is insisted that there was error in giving the second instruction given by the court of its own motion, and the seventh instruction on behalf of the state, because, it is claimed, they assume that the knife with which the wounds were inflicted was a dangerous and deadly weapon.

When these instructions are considered in connection with the first instruction given in behalf of the state, in which that question was submitted to the jury, they are not subject to the objections urged against them. The instructions should be considered all together, and it is not necessary that each one should submit to the jury the question as to whether or not the knife was a dangerous or deadly weapon.

State v. Weeden.

VIII. The criticism on the eighth instruction given by the court of its own motion is untenable, as by it the evidence of defendant's reputation for morality, truth, and veracity, was restricted to his credibility as a witness, and the jury were told that it was no evidence of his guilt.

IX. The instructions given presented the case to the jury in all of its phases, and, with the exception of the third, apparently free from substantial objection. There was, therefore, no error in refusing instructions asked by defendant.

X. As the judgment must be reversed and the cause remanded for further trial for reasons already indicated, it is unnecessary to say more with respect to the contention of defendant that a new trial should be granted him because of the incompetency of one of the jurors who composed the panel of twelve and sat upon the trial of the cause, and whom it is alleged had prejudged the case, than that no man should be allowed to serve as a juror in any case under such circumstances, and if, having served without the knowledge of defendant, and the court before whom the conviction is had becomes satisfied of the fact, should on motion of defendant promptly set the verdict aside, and grant a new trial. However unjustifiable or inexcusable the conduct of defendant may have been, in cutting and stabbing Temple he was entitled to a fair and impartial trial before a jury of his peers, who had not formed or expressed an opinion as to his guilt or innocence. We do not, however, mean to be understood as holding that the juror whose incompetency to sit in this case is alleged by defendant, had prejudged the case.

The judgment is reversed and the cause remanded for further trial in accordance with the views herein expressed. GANTT, P. J., and SHERWOOD, J., concur.