DARIUS A. CONRAD, RESPONDENT, v. ALLIS-CHALMERS MANUFACTUR-ING CO. ET AL., APPELLANTS.—73 S. W. (2d) 438.

Kansas City Court of Appeals. July 2, 1934.

*Leo H. Johnson* and *Madden, Freeman & Madden* for respondent.

*McCollum, Schwind & Barnes* for appellant.

REYNOLDS, C.—This cause arose in the circuit court of Jackson County. It is an action for damages for libel by plaintiff against the defendants. From an adverse judgment for $1,500 actual damages and for $1,500 punitive damages, entered in accordance with the verdict of the jury upon a trial had at the March term, 1933, of the court, the defendants appeal. The action is based upon a letter written by defendant M. R. Voorhees, as branch manager at Kansas City of his codefendant, Allis-Chalmers Manufacturing Company, to the postmaster at Kansas City, Missouri, concerning the official conduct of plaintiff, who was the postmaster at Fairview, Missouri, with respect to the nondelivery and return by plaintiff to him of a certain letter which he had written and forwarded, properly addressed, to one O. R. Swindle at Fairview, Missouri. The letter complained of is as follows:

"RUMLEY DIVISION
"Allis-Chalmers Manufacturing Company
"1224 W. 12th St.,
"Kansas City, Mo.

"July 7, 1931

"Postmaster,
"Kansas City, Mo.
"Dear Sir:

"I am attaching hereto a registered letter that was sent to Mr. O. R. Swindle, Fairview, Missouri, and mailed on June 25th. It has now just been returned to us marked 'Unclaimed—Gone,' I opened this letter on its return to see what the contents were and I have left it open.

"We have had considerable difficulty with this party over a collection. We wanted to know that he received this letter, is why we sent it registered. He undoubtedly had an understanding with the postmaster at Fairview to return this letter to us with this notation, because we had one of our men at Fairview after this date; Mr. Swindle was there then; our representative met him in the country and made a collection from him.

"I am positive that Mr. Swindle has some influence over the Post-

master at Fairview is why this letter was not delivered as it should
have been.

"Yours very truly,
"Rumley Division
"Allis-Chalmers Manufacturing Company
"(Signed) M. R. VOORHEES
"Branch Manager."

The petition charges as follows:

"That the plaintiff was at all times herein mentioned an employee
of the United States Post Office Department and as such was in
charge of the post office at Fairview, Missouri, having the title of
postmaster of said office and as such was esteemed and respected by
his business associates and by other persons and officials in the post
office department and by the inhabitants of Fairview, Missouri, as
a person of good name, fame and credit, a man of unblemished char-
acter and as bearing a reputation for honesty and integrity, both in
business and in private life; that plaintiff has for a number of years
been employed in the post office department, having merited his posi-
tion therein by means of passing certain examinations known as civil
service examinations and by satisfying the proper post office depart-
ment authorities that he was a man of honesty, integrity and good
character and that he was worthy of a position of trust and honor in
the United States Post Office Department; that plaintiff held the
position of postmaster at Fairview on July 7, 1931, and for a long
time prior thereto, and that by reason of his good reputation among
post office officials, plaintiff was entitled to receive favorable con-
sideration for other advanced positions of employment in the post
office department.

"Plaintiff further states that on or about July 7, 1931, the de-
fendant M. R. Voorhees, acting for and on behalf of the Allis-Chalmers
Manufacturing Company and as the agent, servant, and employee of
the defendant Allis-Chalmers Manufacturing Company in the due
course and scope of his employment, maliciously and for the malicious
purpose of bringing the plaintiff into disrepute among the officials of
the post office department and among the inhabitants of Fairview,
Missouri, and for the purpose of preventing plaintiff from making
further advancements in the post office department and for the pur-
pose of doing an irreparable injury to plaintiff's good reputation
in the post office department, sent to the postmaster at Kansas City
a letter in words and figures as follows:

(Here follows in full the letter complained of, being identical with
that above set out.)

"The defendant intending by the aforesaid to inform the aforesaid
postmaster at Kansas City, and the other post office department of-
ficials to whom the defendant knew that in the ordinary course of the

post office routine the above letter would be delivered; that the plaintiff in the course of his official duties had willfullly, maliciously, wantonly and corruptly refused to deliver a registered letter sent through the United States mail which it was his duty as postmaster at Fairview, Missouri, to deliver; the defendant further intending and meaning to charge and charging by the words 'he (meaning O. R. Swindle, the party to whom the registered letter aforementioned was addressed) undoubtedly has an understanding with the postmaster at Fairview (meaning this plaintiff),' that the plaintiff had entered into a corrupt and unlawful conspiracy with one O. R. Swindle for the purpose of withholding from the addressee a letter which it was plaintiff's duty as postmaster at Fairview, Missouri, to deliver, the defendant further meaning by the aforesaid statement that the plaintiff was a party to a criminal conspiracy to violate his duties as an employee of the United States Post Office Department.

"Plaintiff further states that by the words, 'I am positive that Mr. Swindle has some influence over the postmaster at Fairview (meaning the plaintiff) is why this letter was not delivered as it should have been,' which words were spoken of and concerning the plaintiff, the defendant meaning and intending thereby to charge that the plaintiff had willfully, wantonly, corruptly and in violation of his official duties allowed himself to be influenced to such an extent that he failed to perform the duties which were imposed upon him by reason of his official position as postmaster at Fairview, Missouri, and that plaintiff had willfully refused to deliver the United States mails as it was his duty to do, and that the plaintiff was guilty of corrupt and unlawful acts in the discharge of his duties as postmaster at Fairview, Missouri.

"Plaintiff further states that the defendant published the foregoing libelous statements by sending the aforementioned letter to the postmaster at Kansas City, which letter was received by the aforementioned postmaster; that at the time the defendants sent the aforementioned letter to the postmaster at Kansas City they knew, or should have known that the statements therein contained with reference to the plaintiff having an understanding with one O. R. Swindle and with reference to O. R. Swindle having an influence over the plaintiff by reason of which understanding or influence the plaintiff failed to deliver the aforementioned letter, were false and yet for the malicious purposes aforementioned and for the purpose of bringing plaintiff's good name into disrepute in the post office department and in the City of Fairview, Missouri, the defendants maliciously, willfully, and wantonly published the aforementioned letter together with the libelous statements therein contained by sending it to the postmaster at Kansas City, Missouri, knowing that in the ordinary course in which such matters were handled in the post office

department that the letters or copies of the same would be forwarded to various other post office department officials and that, in the ordinary course of proceeding, numerous post office department officials would be called upon to examine said letter and investigate the charges therein contained and thus by a long course of investigations cause plaintiff's reputation and good standing in the post office department to be irreparably injured.

"Plaintiff further states that by reason of the libelous words aforesaid, he was injured in his good name, fame, and reputation and was discredited, injured, and damaged, both in his business connections with the post office department and in private life; that he was greatly humiliated and has suffered, and still suffers, and will continue to suffer great mental agony and shame and as a result thereof has been damaged in the full sum of ten thousand dollars ($10,000) in actual damages; and that said words and charges having been uttered and made willfully, wantonly and maliciously, defendants should respond in punitive damages in the full sum of twenty thousand dollars ($20,000).

"Wherefore, plaintiff prays judgment against the defendants for the full sum of ten thousand dollars ($10,000) as actual damages and for the further sum of twenty thousand dollars ($20,000) as punitive damages, together with his costs in this action."

The defendant M. R. Voorhees answered, tendering a general denial and special pleas of justification and privilege. His answer is as follows:

"Comes now defendant, M. R. Voorhees, and for his separate answer to the petition of plaintiff denies each and every allegation therein contained except such only as are hereinafter expressly admitted or specifically denied.

"Further answering said petition this defendant admits that at all of the times mentioned in plaintiff's petition he was branch manager of the Kansas City office of the Rumley Division of defendant, Allis-Chalmers Manufacturing Company, and that plaintiff was and is in charge of the post office at Fairview, Missouri, holding the office of postmaster at that place.

"Further answering this defendant admits that he wrote and sent to the postmaster at Kansas City, Missouri, the letter mentioned and copied in plaintiff's petition; and that at the time of writing said letter and prior thereto he was handling collections of the Advance-Rumley Thresher Company, a corporation having its chief office and place of business at LaPorte, Indiana, to whom the O. R. Swindle mentioned in said letter had been indebted. That this defendant had written a letter addressed to the said O. R. Swindle at Fairview, Missouri, under date of June 25, 1931, seeking an appointment to meet him about his said indebtedness, which letter he caused to be

sent by registered mail; and thereafter said registered letter was returned by the plaintiff postmaster at Fairview, Missouri, undelivered, to said addressee, which returned registered letter bore a post office stamp of 'Unclaimed' followed by the word 'gone' written thereon by plaintiff. That said word 'gone' so written on the envelope of said registered letter so returned implied that the said addressee Swindle had left the vicinity of Fairview, Missouri, without leaving a forwarding address and that his present address was unknown.

"That during the time that said letter was in said Fairview post office and before its return, this defendant had a representative of the Advance-Rumley Thresher Company call in person on the said Swindle at Fairview, Missouri, or in that vicinity, who had made collection from the said Swindle of his indebtedness to said Advance-Rumley Thresher Company, of which fact this defendant had knowledge; and with the knowledge that the said Swindle had not left Fairview as implied by the action of plaintiff in writing the word 'gone' on said registered envelope and so returned, he arrived at his conclusions expressed in his said letter to the Kansas City postmaster complained of in plaintiff's petition.

"That the Kansas City, Missouri, post office was the sending station of said registered letter, and the postmaster at Kansas City was in charge thereof, and this defendant wrote and sent said letter to the Kansas City postmaster in good faith and without malice and for the sole purpose of protecting the corresponding interests of the parties thereto and by reason of the premises said letter was and became a privileged communication.

"That the facts declared and set forth in said letter complained of by plaintiff were true and the conclusions therein stated of this defendant were founded solely thereon as appears on the face of said letter, and the same were in no way defamatory or libelous of plaintiff, and plaintiff was in no way injured thereby.

"Wherefore, this answering defendant prays that the petition of plaintiff herein be dismissed as to him, and for judgment for costs, and other proper relief."

The defendant Allis-Chalmers Manufacturing Company answered, tendering a general denial and also a special plea denying that its codefendant, M. R. Voorhees, was acting for it and in its behalf at the time he wrote the letter complained of and that it was written within the scope of his employment or in the actual performance of his duties. It further set up a special plea of privilege and that the letter was a privileged communication. It further alleged the truth of the facts set forth in the letter complained of and denied that plaintiff was libeled or injured thereby. It is unnecessary to

further set out said answer. A reply in the nature of a general denial was filed by plaintiff to each of said answers.

The facts developed from the record are substantially as follows: During the year 1931 and for many years prior, plaintiff was postmaster at the town of Fairview, Missouri. The defendant Allis-Chalmers Manufacturing Company is a corporation authorized to do business in the State of Missouri with an office at Kansas City, with defendant M. R. Voorhees in charge thereof as manager. The defendant corporation had entrusted to its codefendant, as its manager, a large number of accounts for collection formerly belonging to the Advance-Rumley Thresher Company, which company had been merged with or was in the process of being taken over by it. One O. R. Swindle was in the employ of the defendant corporation, making sales of machinery for it and collections for it in the vicinity of Fairview, Missouri through its office at Kansas City.

Along in June, 1931, the defendant M. R. Voorhees was desirous of communicating with O. R. Swindle, who may be referred to as his agent with reference to the collections he had in hand or balances due upon machinery which he purchased of defendants. He owed defendant corporation around $1,000 at that time. Voorhees made an effort to get in touch with him. Voorhees put in a telephone call for him but could not reach him. It was reported to Voorhees, however, by the telephone operator, that Swindle was not in Fairview but was out of town and perhaps in Kansas City. Not being able to reach Swindle over the telephone, or to locate him, defendant Voorhees wrote the following letter and mailed it to him at Fairview, registering the same:

"June 25, 1931.

"Mr. O. R. Swindle,
"Fairview, Missouri.
"60673-4; 607005-6; 608037-9
"Dear Sir:

"I am writing this letter to you registered so that I will know you have received it and will ask that you call the writer by telephone at the writer's expense on receipt of this so that I can arrange with you to be there to meet me, as I have positive instructions from the Home Office to make a trip there myself for the purpose of cleaning up these past due items that we have had so much correspondence over and that we have been to considerable expense already in looking after, not only your part but the John Sauer deal.

"I have had a telephone call in for you for the past two days. Reports were that you were away and they thought you were in Kansas City. To date we have not seen you and this matter has got to be

a serious matter with the writer, as the Home Office is blaming me in part for permitting this claim to remain in this condition.

"Yours very truly,
"Rumley Division
"Allis-Chalmers Manufacturing Co.
"(Signed) M. R. VOORHEES,
"Branch Manager."

The envelope in which the letter was enclosed bore directions to return after ten days to Advance-Rumley Thresher Company, Kansas City, Missouri.

Upon the arrival of the letter at the post office at Fairview on June 26, 1931, plaintiff immediately deposited a notice of its arrival at such office to Swindle in Swindle's lock box in which he received his mail and kept the letter in his own possession. This seems to have been done in accordance with United States Government regulations. At the expiration of ten days, the letter not having been called for by Swindle, plaintiff had endorsed thereon the words "Unclaimed" and "Gone" and returned it through the post office at Kansas City, in which it had been originally deposited by defendant Voorhees.

The Government usually leaves a stamp for use in marking "Unclaimed" on letters that are not delivered. The reason why marked "Unclaimed" is usually explained by checking other words thereon, such as "Left" or "No order." The word "Gone," endorsed on the envelope of a letter returned, implies that the person to whom the same was addressed has left but gives no indication whether he has left an order for change of address—that is, whether he has left permanently or only temporarily.

Upon receipt of the registered letter returned July 7, 1931, defendant Voorhees opened it and read it and immediately wrote and mailed the letter complained of by plaintiff to William E. Morton, postmaster at Kansas City, Missouri, enclosing therewith the registered letter. The postmaster at Kansas City immediately, on July 8, 1931, forwarded said defendant's letter, with the registered letter, to plaintiff at Fairview, with a request that plaintiff report at once the service he had given the registered letter. The plaintiff, on July 9, 1931, upon receipt of the letter from the postmaster at Kansas City, immediately wrote such postmaster reporting the manner in which he had serviced the registered letter as follows:

"EXHIBIT 3.
"Fairview, Missouri, July 9, 1931.

"Postmaster,
"Kansas City, Mo.
"My Dear Sir:

"Your favor of July 8 recd. this a. m. notice of register letter 202924 of June 25 addressed to O. R. Swindle was on receipt promptly

placed in Swindle's lock box. He at no time called for the letter. It was held the legal length of time and then returned to sender.

"Mr. O. R. Swindle has left town 'Gone' no one seems to know where.

"I am keeping a copy of the letter to you of July 3, sent you by Rumley Division of Allis-Chalmers Mfg. Co.

"I am asking you to please hold the original letter it may be needed.

> "Yours truly,
>
> "Darius Conrad PM"

Upon receipt of the letter of explanation, the postmaster at Kansas City, on date of July 10, 1931, immediately wrote defendant Voorhees advising him that he had received a report from plaintiff in which plaintiff had again returned the register with the statement that Mr. Swindle had left Fairview without furnishing a change of address and that his present address was unknown. To such letter, said defendant made no reply.

It would appear that Swindle had lived for some years in and around Fairview; that he was engaged, in part, in selling farm machinery for the Advance-Rumley Thresher Company and making collections for it; that the territory in which he operated extended thirty, forty, and fifty miles around Fairview and much of the time he was out in the territory, of which fact defendant Voorhees appears to have known; that he would leave Fairview and no one would appear to know where he had gone; that he would frequently be gone for some time; that, during the last year or two, he had been gone from Fairview about half his time. For a while, he lived with his parents and afterwards with one Mr. Hudson and still later at a hotel in Fairview. He was unmarried. He also traded a great deal and looked after his father's farm in the country and, later, had something to do with a farm of Mr. Hudson's. At the time he lived with his father, he had his mail put in his father's lockbox at the post office. His father having left Fairview, he continued to lease the box his father had and had it leased at the time the letter (the subject of this controversy) was mailed him. When he left town, he never called the plaintiff's attention to such fact or left with him any forwarding address to which his mail might be sent. His ordinary mail— that is, other than registered—was put in his box so that he could get it any time. At the time the registered letter reached Fairview, it seems that mail received upon and since June 23 remained in his box; that, upon the date plaintiff received the letter from Mr. Morton, postmaster at Kansas City, Missouri, there were thirty-one letters remaining in his box that had not been taken out by him; and that none of his mail had been taken out between June 23 and July 9. During the time the registered letter remained at the post office,

plaintiff made frequent inquiries to ascertain Swindle's whereabouts; but no one seemed to know. It was suggested by some that he had gone to live with his parents; but, where they were living, no one seemed to know. The return card upon the envelope directed that the registered letter be returned to the address indicated thereon after ten days. Government regulation required that, if not delivered within that time, it be so returned. Plaintiff, at the expiration of ten days, marked it "Unclaimed" and "Gone," indicating that it could not be delivered to the addressee for the reason that he was not there. Whether he was gone permanently or temporarily only was neither stated nor indicated. It seems that, after having registered the letter of June 25, defendant Voorhees sent a field agent named Wells, representing defendants, to Fairview to see if he could locate Swindle and collect from him. This agent visited Fairview about June 29 but failed to find him there. He, however, continued his search; found Swindle north of Exeter some distance in the country and some twelve or fourteen miles from Fairview; and collected some $275 from him on account due defendant corporation. Said agent Wells called defendant Voorhees on that date over the telephone and advised him that Swindle was not at Fairview but was in the country north of Exeter on the Mattingly farm, and said agent procured a draft through the Bank of Exeter and forwarded it to defendant Voorhees. It thus appears that defendant Voorhees had such information concerning Swindle July 7 when he wrote the letter complained of to William E. Morton, postmaster at Kansas City.

Defendant Voorhees testified that he knew nothing of plaintiff at the time he wrote the letter or of his prior relation with Swindle and that he was not in possession of any fact or facts, other than those mentioned in his letter, upon which to base such letter or the matters therein contained. It further developed from his testimony that, immediately prior to the time he wrote the letter to the postmaster at Kansas City, he had endeavored to locate Swindle at Fairview and knew he had gone from there and defendant Voorhees was unable to find any one who knew where. He admitted that he was aware of the fact that Swindle was not at Fairview at the time he mailed the registered letter; that he also knew that Swindle was not at Fairview at the time he wrote the letter complained of to the postmaster at Kansas City upon the return of the registered letter to him; and that he knew, at the time the registered letter was returned to him, that Swindle was at Exeter.

There was no evidence whatever that Swindle was at or in Fairview at the time the registered letter reached Fairview on June 26, 1931 or afterward, during the time such letter was there and prior to the time it was returned to defendant by plaintiff. There was no evidence whatever that, under postal regulations, the plaintiff, as postmaster,

was required to look up Swindle in order to deliver the register to him; but there was evidence that such regulations precluded a delivery of the same at any place other than the post office where plaintiff was required to keep it and deliver it when called for. He was only required to give notice by mail to Swindle of the receipt of it upon its arrival. This, plaintiff did by writing a notice addressed to Swindle and mailing it to Swindle at Fairview by depositing it in Swindle's box. There was no evidence whatever that plaintiff was in collusion with Swindle or under Swindle's influence with respect to the nondelivery of said letter or otherwise. The defendant, upon the trial, although pleading justification, disavowed in his evidence any claim that plaintiff was in collusion with Swindle.

Upon the trial, at the first offer of evidence by plaintiff, defendants objected to the introduction of any evidence, assigning as reason therefor that the petition was, on its face, deficient in that the letter complained of was privileged; that the facts therein contained were not negatived; that the comments in said letter were not libelous *per se*; and that no allegations of express malice or special damage were made in the petition—which objection was by the court overruled. At the close of the whole evidence, defendants separately requested instructions in the nature of demurrers to the case made, directing a verdict for defendants, which instructions were by the court denied.

### OPINION.

Defendants on appeal make numerous assignments of error. We will consider first their complaints relating to the action of the trial court in overruling their objection to the introduction of any evidence under the petition, made upon the trial at the time plaintiff offered to introduce evidence and immediately prior to the introduction of any, and to the action of the court at the close of the case in refusing to grant their separately requested instructions in the nature of demurrers directing a verdict for each.

1. These two complaints or assignments, together with their further complaint relating to the action of the court in refusing their requested instruction lettered "C," are grouped and discorded together in defendants' argument in their briefs; and we may therefore properly consider them together.

The objection to the introduction of evidence was made after the cause was taken up for trial, without the petition having been attacked by demurrer or otherwise. Such an objection made in such manner is not much favored by the courts; and, in the modern development of the law, it sounds as a voice from the tombs. Judge RAGLAND, in the late case of Grinstaff v. J. Goldberg & Sons Structural Steel Co. (Mo.), 40 S. W. (2d) 702, said, "The objection to the introduction of any evidence served no other purpose than that

830

of incumbering the record and consuming the time of the court. Such an objection, so far as the writer is able to discover, serves no purpose in any case. It is a procedural archaism that could well be consigned to 'the limbo of forgotten things.' ''

A petition is always to be held good against such an objection made in such manner, if it appears by implication, from a reasonable construction of the allegations of the petition, that the omitted matters complained of were intended by the pleader to be made. [Thompson v. Lyons, 281 Mo. 430, l. c. 445-446, 220 S.'W. 942.] However, as the same points sought to be covered by the objection are covered by the demurrer, we will, without further comment or disposition at this point, consider and dispose of such objection in connection with the demurrer.

2. The defendants complain that the statements in said letter concerning the plaintiff were mere comments upon certain facts set out in the letter relating to plaintiff's conduct; that they were not libelous *per se* and not actionable without a charge of special damages in the petition, which charge plaintiff had failed to make therein; that such letter was privileged as a matter of law and, in view of such privileged character of it and of the statements therein, the petition was required also to charge express malice upon the part of defendants toward the plaintiff in writing and publishing the same, which charge had been omitted therefrom; and that there was no denial in the petition of the facts alleged in the letter.

3. The petition, among other things, sets out in full the letter complained of. It alleges that the charges therein made against the plaintiff were false and known by defendants, at the time it was written, to be false. It further charges that, with such knowledge of falsity, the defendants maliciously, willfully, and wantonly published said letter together with the libelous statements therein contained for the malicious purposes in said petition aforementioned and for the purpose of bringing plaintiff's good name into dispute.

At another place, it alleges that, at the time of the publication of said letter, the defendants knew or should have known that the statements therein contained with reference to plaintiff's having an understanding with O. R. Swindle and with reference to Swindle's having an influence over him, by reason of which understanding and influence the plaintiff failed to deliver said letter aforementioned in the petition, were false; yet. for the malicious purposes mentioned ''and for the purpose of bringing plaintiff's good name into disrepute in the post office department and in the City of Fairview, Missouri, the defendants maliciously, willfully, and wantonly published the aforementioned letter together with the libelous statements therein contained . . . . . . . . knowing . . . . . . . . . .''

4. In charging malice or that the act was maliciously done, it was

not necessary that the petition use the word "express" malice. The character of the malice as being "express" or otherwise could be shown under the general allegation that the acts done were maliciously done or done with the malicious intent of injuring plaintiff in his good name, etc. Under our statute, Section 4366, Revised Statutes 1929, libel is "the malicious defamation of a person made public in any printing, writing, sign, picture, representation or effigy tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse." [Seested v. Post Printing & Publishing Co., 31 S. W. (2d) 1045.] The contention of defendants in such regard must therefore be denied. If the article complained of touches the injured party in any of the particulars cited, it is libelous *per se*.

That the letter complained of, with the charges made—whether the charges be regarded as facts or comments upon facts—was libelous *per se*, unless justified under a plea of the truth thereof or protected as privileged under a proper plea, we think there can be no doubt.

5. Words which, upon their face and without the aid of extrinsic proof, are injurious are defamatory *per se* and actionable as such (36 C. J. 1150, par. 17) ; and it is not necessary that special damages be alleged or shown. The law presumes damages from the publication of such a libel. They are not required to be shown by evidence. [Rail v. National Newspaper Association, 198 Mo. App. 463, 192 S. W. 129.]

6. In determining whether the charges leveled at plaintiff by defendant Voorhees in the letter complained of are libelous *per se* or otherwise, the entire letter is considered. [36 C. J. 1157; Clark v. Hill, 252 S. W. 433; McClung v. Star-Chronicle Pub. Co., 274 Mo. 194, 202 S. W. 571; Hagener v. Pulitzer Publishing Co., 172 Mo. App. 436, 158 S. W. 54.]

7. The letter was written of and concerning the plaintiff as a public official and concerning his official fitness and conduct in such capacity. It directly charged him with misconduct in the nondelivery and return of a certain registered letter with the notation thereon that the addressee was gone when the letter should have been delivered and, in doing so, acting under an understanding with the addressee, O. R. Swindle, that it should not be delivered but should be returned with such notation by reason of some influence had over plaintiff by such addressee.

The language is unambiguous. It is plain English and such as may be readily understood. It unmistakably referred to the plaintiff. It required no interpretation, explanation, or extrinsic proof to ascertain its meaning or application. It directly and expressly made the charges and applied them to plaintiff. If false, it was libelous *per se*

and actionable as such, unless it was privileged and written on an occasion of privilege and under circumstances conferring privilege upon- its contents. That it was false, the law in the first instance presumes. [Rail v. National Newspaper Association, supra; Minter v. Bradstreet Co., 174 Mo. 444, l. c. 496; 73 S. W. 668.] It tended to provoke plaintiff to wrath and to expose him to public hatred, contempt, and ridicule and to deprive him of the benefits of public confidence and social intercourse. Whether it charged plaintiff with the commission of a crime or with misconduct such as might justify his removal from office is immaterial. [Hagener v. Pulitzer Publishing Co., supra.] It has never been held that, in order to be libelous, the publication complained of must accuse a person of committing a crime. [Seested v. Post Printing & Publishing Co., supra.]

8. Besides, if the petition should be held insufficient with respect to charging express malice, the defendants each tendered such issue in their respective answers in pleading the truth of said charges or statements and in pleading that they were made in good faith without malice, with which pleas plaintiff joined issue by his replies thereto; and, hence, the omission of such charge from the petition, if it was omitted therefrom, would stand cured. [Hughes v. Carson, 90 Mo. 399, 2 S. W. 441; Henry v. Sneed et al., 99 Mo. 407, 12 S. W. 663; Garth v. Caldwell, 72 Mo. 622; N. Y. Life v. Rees, 19 Fed. (2d) 781, l. c. 787.] Proof of express malice equally appears from the record. Express malice may consist either of actual spite or ill will toward the one defamed or of a reckless and wanton disregard of one's rights and interests. ]Minter v. Bradstreet Co., supra; State v. Weeden, 133 Mo. 70, 34 S. W. 473; Rail v. National Newspaper Association, supra.]

9. Actual malice is shown by the falsity of the facts, together with knowledge by the publisher of the libel of such falsity. [Cook v. Pulitzer Publishing Co., 241 Mo. 326, l. c. 362, 145 S. W. 480.] That the charges against plaintiff in the letter, whether such charges be regarded as a statement of facts or as comments upon other facts, were shown by the evidence to be false; and that they were known to be false by the publisher of the letter at the time it was written and published is likewise shown by the evidence. There was no contention to the contrary upon the trial. The defendant Voorhees, who wrote the letter as manager for his codefendant, notwithstanding the pleas of justification and of privilege interposed by himself and his codefendant, while a witness upon the stand, conceded both the falsity of said charges and his knowledge of such falsity. The letter upon its face also bore evidence of express malice in the intemperate, extravagant, and reckless character of the language used and charges made. The language used exceeded the plain necessities of the situation and any possible privilege to which it was entitled.

[Sullivan v. Strathan-Hutton-Evans Commission Co., 152 Mo. 268, l. c. 277, 53 S. W. 912; Parsons v. Henry, 177 Mo. App. 329, l. c. 337, 164 S. W. 241; Holmes v. Royal Fraternal Union, 222 Mo. 556, 121 S. W. 100.] The language used was intemperate and beyond the obligation of any duty imposed upon defendants. That the subject may be privileged and communications thereon unprivileged where they go beyond the plain necessities of the situation is well settled. [National Cash Register Co. v. Salling, 173 Fed. 22, l. c. 26.]

10. The cause was submitted to the jury under instructions requiring, as a prerequisite to the return of a verdict for the plaintiff, the existence of express malice. The question of privilege and fair comment involved among the defenses set up by defendants therefore becomes immaterial. Qualified privilege, if it existed under the facts and the law, is no defense against express malice. Qualified privilege if found to exist, *prima facie* rebuts malice; and whether it does exist may, in the first instance, be a question for the court; but such presumption may be overcome by proof of express malice. Whether it is so overcome become a question for the jury. [Wagner v. Scott, 164 Mo. 289, l. c. 301, 63 S. W. 1107.] Such proof is not required to be made by extrinsic evidence. It may be inferred from the relation of the parties, the circumstances attending the publication, and the terms of the publication itself. [Wagner v. Scott, supra.] The defendants cannot be justified if they have included in this publication language of a defamatory nature not warranted by the occasion which called for the publication. [Wagner v. Scott, supra.]

It is the province of the court to determine whether, in the first instance, the occasion exists which, in the absence of malice, justifies the publication. If so, it becomes incumbent on plaintiff to show the existence of express malice to sustain his action to the satisfaction of the jury, whose exclusive province it is to pass upon the question. [Wagner v. Scott, supra.] The doctrine of the case of Wagner v. Scott seems to have been recognized in all subsequent cases and may be accepted as a true statement of the law.

11. In cases of qualified privilege, the privilege to be extended depends not only upon the occasion which calls forth the publication but upon the character of the communication; and, if the communication itself exceeds the privilege, it, in itself, furnishes the evidence of express malice.

The defendants rely upon the claimed qualifiedly privilege character of the letter in question, which they plead as requiring the proof of express malice by defendants in publishing the same as a result of spite or ill will. However, as has already been shown herein, the showing of express malice is not limited to the existence of ill will or spite alone; but it may be shown from a reckless disregard of the rights of the party defamed (Minter v. Bradstreet Co., supra);

and, whether the letter be qualifiedly privileged, as a matter of law under the evidence, or not, there is abundant evidence in the record adduced by the plaintiff tending to show the existence of express malice, against which express malice the privilege affords no defense. That it is not privileged as a matter of law when it exceeds the bounds of the privilege warranted and indulges in unnecessary and unwarranted defamation does not *prima facie* rebut express malice presumed, in the first instance, from the publication but, upon the other hand, furnishes evidence of express malice and supports the presumption. [Wagner v. Scott, supra; Parsons v. Henry, 177 Mo. App. 329, l. c. 336, 164 S. W. 241.] Upon a submission warranted by the evidence requiring the jury to find express malice before a verdict might be returned for plaintiff, its existence was found by the jury. Besides, if the letter complained of was ever entitled to qualified privilege, the right to such status was lost by the use of the intemperate and unnecessary language used, exceeding any duty upon defendants or any interest they had. (Authorities cited, supra.) It was unnecessary for any defamation of plaintiff at all under the circumstances of the return of the registered letter. The envelope in which said letter had been mailed bore directions for the return thereof after ten days. It was not returned until the ten day period had elapsed. The explanation why it had not been delivered appearing thereon was that it had been unclaimed and the addressee had gone. If the postmaster at Kansas City had any corresponding interest therein, all that was necessary for defendants to have done was to have enclosed the returned register with the notations thereon and called his attention to the fact that it had been mailed and returned and to have asked him to ascertain why it had not been delivered. That was the sum total of defendants' privilege under the circumstances of this case.

They had no evidence of any wrong doing upon plaintiff's part, and there existed no occasion for them to charge plaintiff with such or with wrongful failure to deliver the letter by reason of an understanding with the addressee that it was not to be delivered—although it should have been—but that it was to be returned as a result of the addressee's wrongful influence over plaintiff. True, defendants lost their twelve cent stamp and received no returns therefor which, of course, was hard to bear in such depressed times as prevailed; but such fact did not, upon discovery by them, enlarge their rights so as to justify them in defaming the plaintiff on account thereof or in even blaming him therefor. Note the carefully planned writing of the letter. The interest of defendants in the delivery of the registered letter is carefully set out. Then, to make a case against the plaintiff, it proceeds: "He (the addressee) undoubtedly had an understanding with the postmaster at Fairview to return this letter to us with this

notation, because we had one of our men at Fairview after this date; Mr. Swindle was there then." Then, as quick as a flash, they qualify those statements by "——our representative met him in the country and made a collection from him." Defendants thought that, to make a case against the plaintiff, Swindle must have been in Fairview. They sought to make such case by stating that Swindle was there; but, recognizing the cold-blooded character of such an act, they explained that their statement that Swindle was in Fairview rested upon their information that their representative met Swindle in the country (which explanation did not contradict but confirmed the untrue statement that Swindle was in Fairview). Just where in the country they did not state, although they had been informed that it was near Exeter in another county some twelve or fourteen miles from Fairview. Defendants did not state in such letter that they had tried to locate Swindle in Fairview and had been unable to do so; that they had a telephone call in for two days and were unable to get him or locate him but had learned that he was gone from Fairview and that no one seemed to know where; and that they had also been advised by their representative, upon his visit, that he could not find Swindle in Fairview but had found him in the country. By such qualification, they did not explain that Swindle was not, in fact, in Fairview but rather confirmed their statement that he was, although conscious that such was not the fact. If they had wished the postmaster at Kansas City to pass fair judgment on the situation, they should have submitted all the facts and misstated none. If evidence of reckless disregard of the rights of others is needed, if evidence of pique and spite is needed, if evidence of a purpose to injure is needed—we think they all are shown by the letter, its contents, its studied wording, its unnecessary and uncalled for charges, its evident purpose without cause to injure, which as a matter of law, placed the letter beyond the pale of privilege or at least rendered the question of privilege one for the jury.

12. The defendants further contend that the matters complained of in the letter are mere comments by defendants upon other facts touching the official conduct of plaintiff and were such comments as defendants had the right to make as long as made in good faith and based upon the truth and were, therefore, privileged and nonactionable.

That such matters were mere comments is not readily apparent. They were rather charges of alleged facts. To say of plaintiff that he undoubtedly had an understanding etc., was not a comment; but it was a charge that he did have an understanding as a matter of fact. To say of plaintiff "I am positive that Mr. Swindle has some influence over the postmaster at Fairview" is to charge as a fact that Swindle did have an influence over plaintiff. It cannot be

camouflaged in such way as to make it a mere comment. The letter contained no comment at all upon plaintiff's alleged conduct. It merely charged the conduct as a fact and stopped.

Such charges, further, were unsupported by any facts in the record upon which they might be made to rest. There was not a fact in the record connecting plaintiff with the letter returned other than that it came into his office with the notation thereon to return after ten days; and, not having been called for within the ten days, it was by him returned. There is no evidence whatever of any understanding between him and the addressee that it was to be wrongfully returned or otherwise or that plaintiff was in any way under the influence of the addressee. The letter itself was studiously written. Stung by the return of his letter undelivered, the defendant Voorhees deliberately so framed it to carry a poisoned dart, as intended, direct to the official heart of the plaintiff, an innocent victim, with reckless disregard of plaintiff's rights and to his certain injury. If the matters therein contained were true, plaintiff was unfit to occupy his position. That there was no truth in such matters was acknowledged by defendant Voorhees upon the stand. That there was no truth in the charge that Swindle was in Fairview at the time defendants' representative was there was likewise admitted. That there was no truth in any of such matters was acknowledged by defendant Voorhees as having been known to him at the time he wrote the letter. There could, then, be no good faith in writing it or privilege or justification accorded it in any event, whether considered as a comment or an alleged fact. [Cook v. Pulitzer Co., supra; McClung v. Pulitzer Co., 279 Mo. 370.]

It is true, as contended by appellant, that the right of fair comment upon official acts and conduct always exists and is entitled to privilege where based upon the truth and made in good faith; but, when otherwise made, there is no protection to be accorded such comments as privileged; or, if such alleged comments be unnecessary, extravagant, and unreasonable and the language used not called for by the exigencies of the occasion under review, then, although otherwise privileged as to occasion or subject, no privilege can be accorded them.

14. It follows from what has been said that there was no error in overruling defendants' objections to the introduction of any evidence under the petition nor in the refusal of the court to grant defendants' several, requested instructions directing a verdict nor in the refusal of defendants' requested instruction ''C'' relating to the privileged character of the letter as a matter of law nor in the submission of the case to the jury.

15. Defendants further assign as error the giving of instructions 1, 2, 3, 4, 6, and 8 in behalf of plaintiff. In their argument, defend-

ants group instructions 1, 2, 3, 4, and 8 and discuss the assigned error relating to each in the same connection; and we will adopt the same course.

The general complaint alleged against the giving of said instructions is that they and each disregard the rule that, where qualified privilege is claimed for the communication complained of, the privilege is said to rebut the presumption of express malice implied from the defamatory subject-matter of the communication and the burden of proof is cast upon the plaintiff to prove express malice on the part of the author; and the complaint cites Lee v. Fuetterer Battery & Supplies Co., 23 S. W. (2d) 45, l. c. 63; with Peak v. Taubman, 251 Mo. 390, 158 S. W. 656, and other cases of like import in its support. Instruction number 3 properly directed the jury with regard to the issues upon the claim of privilege asserted by defendants. It was unnecessary that such question be submitted in any of the other instructions. In the instant case, there was oral evidence of the falsity of the facts and charges alleged and of the known falsity thereof by the writer of the letter; and there was no place left for a peremptory instruction by the court declaring the letter privileged. It was all a question for the jury, and such question was submitted to the jury.

16. Defendants further complain of instruction 3 as erroneous in its definition of express malice and in leaving the finding of express malice to be deduced from the letter complained of and in not requiring evidence of actual ill will as the foundation of such malice. Such instruction is not open to the objection made. From what has been said under the discussion of the point relating to the refusal by the trial court of directed verdicts as requested by defendants and other related complaints, this assignment must be denied.

17. Defendants further complain of instruction number 4 as erroneous in that it ignores the distinction required to be made between facts and comments and in that it wrongfully submits the question of the truth or falsity of the comments made upon admitted facts without an allegation in the petition of express malice or proof thereof in the record. So far as open to any objections made, all the points involved under this head were disposed of adversely to defendants' contention in the disposition of the error alleged relating to the refusal of a directed verdict as hereinbefore appears. Such complaint is therefore disallowed.

18. Defendants further complain of instructions 1, 2, 3, and 4 as erroneous and inconsistent in distinguishing between legal and express malice and in ignoring the privilege claimed for the letter complained of as a matter of law and in permitting a recovery for legal malice as well as express. We do not find such instructions or any of them open to the objections made. They were not inconsistent

or confusing in the matters complained of, or otherwise. They are in form approved from time to time by our Supreme Court and appellate courts in cases involving like issues and questions as here involved, and they properly declare the law. This assignment is therefore denied.

19. Defendants further contend that instruction 8 was erroneous in leaving the question as to whether the letter was libelous *per se* to the jury. In the case of Sotham v. Drovers' Telegraph Co., 239 Mo. 606, l. c. 622, 144 S. W. 428, the Supreme Court said:

"This instruction sets forth the alleged libel and is followed by the statutory definition of libel. The court then directs the jury that if it believe and find from the evidence that the article published falls within the definition previously given, then the article is libelous under the statute. In thus instructing the jury the court was following not only the law as approved by this court but the general law upon the subject (Julian v. Kansas City Star Co., 209 Mo. 35; McCloskey v. Publishing Co., 152 Mo. 339; Odgers on Libel and Slander (4 Ed.), 105). In Odgers, supra, the rule is laid down that: 'The proper course is for the judge to define what a libel is in point of law and to leave it to the jury whether the publication in question falls within that definition.'"

There was, therefore, no error in this regard.

20. Instruction 5 was proper and properly declared the law.

21. Defendants next complain of instruction 6 in submitting general damages and in telling the jury that such were presumed. Such instruction is not erroneous in such respect. The letter here complained of was libelous *per se* and was actionable as such. It was not necessary that special damages by pleaded. The complaint is denied.

22. Defendants further complain of instruction 6 as erroneous in submitting the question of punitive or exemplary damages as against the corporate defendant, for the reason that such defendant had neither authorized nor ratified the writing of the letter. However, if such letter was written by defendant Voorhees as manager of the corporate defendant and within the scope of his employment, then the corporate defendant is equally liable with defendant Voorhees for his libelous act in writing the letter. [Fensky v. Maryland Casualty Co., 264 Mo. 154, 174 S. W. 416.] The evidence tends to show that defendant Voorhees did write the letter complained of as manager of the corporate defendant and that it was written within the scope of his employment. It was written with reference to a registered letter written by him upon company business which he had in charge, which registered letter had been returned undelivered.

23. It is also urged by defendants that the award of punitive damages by the jury was erroneous and improper, (1) allegedly because the letter was not libelous *per se* and, (2) because, as to the

corporate defendant, such defendant neither knew of, authorized, or ratified the act of defendant Voorhees, as its agent in writing it. We have already held adversely to each of defendants' contentions, both as to the libelous character of the letter and the liability of the corporate defendant for the act of the defendant Voorhees as its agent in question. The corporate defendant's liability does not rest upon an express authorization of the particular act in question or upon immediate knowledge or ratification by it of such act but upon the fact that the defendant Voorhees was acting for it in the conduct of its business within the authorized line of his employment. Under such circumstances, it not only became liable for defendant Voorhees' act but liable with Voorhees and to the exact same extent as Voorhees. [Priest v. Central States Fire Ins. Co. (Mo. App.), 9 S. W. (2d) 543, l. c. 544; Connell v. A. C. L. Haase & Sons Fish Co., 302 Mo. 48, 257 S. W. 760; Haehl v. Wabash Railway Co., 119 Mo. 325, l. c. 343.] If Voorhees was liable for punitive damages, it follows that the corporate defendant likewise was. The record contains evidence of facts which, if found by the jury, warranted the submission of the question of an assessment of punitive damages for the consideration of the jury.

24. It is urged that the letter complained of was not written within the scope of defendant Voorhees' employment as manager of the corporate defendant. The evidence tends to show that defendant Voorhees was in charge of the corporate defendant's business through its office at Kansas City and that collections were being made through said office by the corporate defendant, under his management, of certain accounts which may be referred to as the Rumley accounts, which accounts had been taken over by the corporate defendant under a merger arrangement by which it had taken over the business and assets of the Advance-Rumley Thresher Company, that one of the debtors on one of said accounts was O. R. Swindle from whom a collection was being sought to be made; and that Swindle's total indebtedness due the corporate defendant on the Rumley account and otherwise was around $1,000. Defendant Voorhees as manager, in an effort to locate Swindle for the purpose of arranging a collection upon or a settlement of said indebtedness, wrote the letter described in the evidence addressed to Swindle at Fairview and mailed it by registered mail to Fairview. The register was returned to corporate defendant at Kansas City where it came into the hands of defendant Voorhees as manager after ten days, as directed on the envelope with the notation thereon ''Unclaimed—Gone.'' Defendant Voorhees thereupon enclosed the same to the Honorable William E. Morton, postmaster at Kansas City—through which office the same was originally mailed and through which it was returned—together with the letter complained of, complaining of plaintiff's service of the same. The

letter complained of was upon the stationery of the corporate defendant and was signed "Rumley Division, Allis-Chalmers Manufacturing Company, M. R. Voorhees, Branch Manager." It thus appears that such act of the individual defendant Voorhees was clearly within the scope of his employment by the corporate defendant. It is immaterial that part or all of the Swindle account had been collected at the time it was written. The fact appears, however, that only between $200 and $300 had been collected. The matter concerning the service of the registered letter from its Kansas City office relative to its business was one in which the corporate defendant was directly interested; and defendant Voorhees, in calling attention to the service such letter had received, was clearly acting upon company business and within the scope of his employment.

We have disposed of all complaints and errors assigned by defendants upon this appeal in their briefs. We find none of them well taken. We find no prejudicial error upon the trial. The cause was well tried, and the verdict was for the right party. The judgment should be affirmed, and it is so ordered. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is affirmed. · All concur.