## NATIONAL STANDARD LIFE INS. CO. v. BILLINGTON.

No. 13262.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 6, 1935.

Rehearing Denied Jan. 17, 1936.

See, also, 68 S.W.(2d) 239.

Joseph W. Bailey, Jr., of Dallas, and Samuels, Foster, Brown & McGee, of Fort Worth, for appellant.

Ira Butler, Perkins & Culbertson, and A. B. Culbertson, all of Fort Worth, for appellee.

BROWN, Justice.

Appellee, Joe Billington, sued appellant, National Standard Life Insurance Company, on a charge of slander in the district court of Tarrant county.

The plaintiff in his original petition, upon which he went to trial, alleged substantially that prior to December 1, 1931, he was the agent of the defendant company, in Fort Worth, Tex., under the supervision and direction of Robert Broussard, vice president, and E. M. McCormick, secretary, respectively, of the defendant company; that he was discharged in November, 1931, and in the settlement of the accounts between him and the defendant company, a controversy ensued which terminated in the filing of a suit by the plaintiff, against the defendant company, for certain commissions. That after the suit for commissions was filed, and on January 12, 1932, Broussard and McCormick made certain defamatory and slanderous statements of and concerning the plaintiff in the presence of Steve Noble, G. G. Bruner, and Phil

Armon. The statements of which complaint was made were substantially these: (1) Robert Broussard said, "Joe (referring to plaintiff), if you don't dismiss this suit, we will send you to the penitentiary for holding out money that belongs to the company"; (2) E. M. McCormick said: "Yes, and we will send you to the Federal Penitentiary for using the mails to defraud"; (3) Robert Broussard said: "You will never be able to make a contract with another insurance company, as long as you have a suit pending against this company"; and "Now, Joe, if I put you in the penitentiary, don't think hard of me, because you caused it; you made me do it," and, "if you go to the penitentiary, don't think hard of me, because I tried to get you to settle it."

The plaintiff alleged that he bore a good reputation and had been free of the crime of embezzlement and conversion of funds, and of using the United States mails to defraud; it was alleged that the statements were made maliciously, with the intent to injure the plaintiff, his good name, character, and reputation, and injure him in his business and occupation; it was further alleged that the charges were false and untrue, and were falsely, willfully, and maliciously published, and as a result thereof, he has sustained actual damages in the sum of $20,000, and exemplary damages in the sum of $10,000.

The defendant went to trial on its first amended original answer, which consisted of a general demurrer and numerous special exceptions, all of which were overruled; a general denial and certain special pleas. It was specially pleaded that whatever matters were discussed between the plaintiff and the representatives of the defendant were matters which related to the affairs of the corporation, and related to the acts and conduct of the plaintiff as a solicitor and employee of the defendant company, and that since they involved the affairs of the corporation, such statements, even if made, were privileged, and that the discussions, if any, had with reference to such matters could form no basis for a cause of action.

It was further pleaded by the defendant that notwithstanding matters discussed on the occasion related to the business affairs of the company and the acts of the plaintiff as an employee in relation thereto, they were confined to the parties having an interest in the subject-matter, and therefore, in contemplation of law, there was no publication.

The cause was tried to a jury and fifteen special issues submitted, in substance as follows:

(1) Did Broussard make the statement: "Joe, if you don't dismiss this suit, we will send you to the penitentiary for holding out money that belongs to the company?" Answer: "Yes."

(2) Was such statement made in the presence and hearing of Glen Bruner? Answer: "Yes."

(3) Was Broussard acting in the course of his employment when he made the statement? Answer: "Yes."

(4) Did McCormick make the statement: "Yes and we will send you to the federal penitentiary for using the mails to defraud?" Answer: "Yes."

(5) Was such statement made in the presence and hearing of Glen Bruner? Answer: "Yes."

(6) Was McCormick acting in the course of his employment? Answer: "Yes."

(7) Did Broussard make the statement: "Now, Joe, if I put you in the penitentiary, don't think hard of me, because you caused it; you made me do it, and if you go to the penitentiary, don't think hard of me, because I tried to get you to settle it?" Answer: "Yes."

(8) Was such statement made in the presence and hearing of Glen Bruner? Answer: "Yes."

(9) Was Broussard acting in the course of his employment? Answer: "Yes."

(10) Do you find from a preponderance of the evidence that, at the time of the conversation on January 12, 1932, in the Worth Hotel, the witness Glen Bruner had any interest, directly or indirectly, in the subject-matter under discussion? Answer: "Yes."

(11) What amount of money, if any, if paid now in cash do you find from a preponderance of the evidence would fairly and reasonably compensate the plaintiff, Joe Billington, for the damages, if any, he has sustained as the result of the statements, if any you have found were made?

To aid in answering this question, the court instructs you that you may take into consideration the loss of business, if any, directly resulting from any statements, if any were made, in the past up to the present time, and also the mental anguish,

if any, loss of reputation, if any, injury to his good name and character, if any, loss of esteem and respect, if any, of his friends and neighbors, which you may believe he has suffered in the past, if any, and which you may believe from the evidence he will in reasonable probability suffer in the future, if any, but you cannot consider mere anger, rage, or resentment of plaintiff against defendant.

Answer in dollars and cents, if any you find.

Answer: "$5,000.00."

(12) Were the statements inquired about in issues 1 and 7 made with malice? Answer: "Yes."

"Malice" was defined as follows: "By the term 'malice', as used in this charge, is meant ill-will, bad or evil motive, or such gross indifference to the rights of others as will amount to a willful or wanton act."

(13) Was the statement inquired about in issue 4 made with malice? Answer: "Yes."

(14) Should exemplary charges be assessed? Answer: "Yes."

(15) The amount of exemplary damages? Answer: "$500.00."

On this verdict the trial court rendered judgment for appellee against appellant for $5,500, and the appeal followed.

There are eight assignments of error, but we do not deem it necessary to consider all of them.

■ The contention is made that there was no publication of the alleged slanderous statements, they having been made in the presence only of those who were employed by the defendant, and therefore privileged. This contention is supported by the evidence and the verdict of the jury, wherein it was found that the words were uttered in the presence only of Glen Bruner and that Bruner had an interest, directly or indirectly, in the subject-matter under discussion.

We pretermit passing upon the issue of absolute privilege and consider the case before us as qualifiedly privileged, under the facts adduced and the verdict of the jury as to the status of Bruner, before whom the statements complained of were uttered.

■ The opinion in the case of Denver Public Warehouse Co. v. Holloway, 34 Colo. 432, 83 P. 131, 133, 3 L.R.A.(N.S.) 696, 114 Am.St.Rep. 171, 7 Ann.Cas. 840, announces the rule which we believe controls the disposition of the case before us.

Therein it is said: "This kind of malice * * * which overcomes and destroys the privilege, is, of course, quite distinct from that which the law, in the first instance, imputes with respect to every defamatory charge, irrespective of motive. It has been defined to be an 'indirect and wicked motive which induces the defendant to defame the plaintiff.'"

■ The evidence is insufficient to show such malice as is necessary to overcome the privilege established, in this case.

The undisputed testimony of the witness Noble is that when appellee, Billington, left the hotel room where the conversation occurred all parties shook hands and appellee was laughing.

Appellee testified with reference to the remarks made to him: "The remarks were so ridiculous that I saw it was just a drunken fool." "Well, I saw that the remarks that he made were so ridiculous that there was no truth in them, and they didn't make me so mad, as when he first said it."

The entire record discloses that all remarks were made in a conference had for the purpose of settling a lawsuit that appellee had brought against appellant company, and the undisputed testimony is that the officers agreed to prepare and furnish appellee a statement as they saw the matters in dispute and that appellee was to prepare and furnish a statement covering what he contended was actually due him. It further appears that appellee did not dismiss his suit, but that it was settled by the parties.

We are of the opinion that the trial court should have entered judgment in favor of the defendant below, appellant here.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing against appellant.

## On Motion for Rehearing.

Complaint is made that in the original opinion we made mention of the fact that as to the suit for commissions filed by appellee against appellant, same was not dismissed but was settled by the parties.

We gathered this from the record, and are told that we were in error, in that the case was contested through the courts. We do not think the erroneous statement by us was material to any issue in the case at bar, but we cheerfully withdraw it.

The motion for rehearing is overruled.