IDA MAY PERDUE v. MONTGOMERY WARD & COMPANY, a Corporation, Appellant.—107 S. W. (2d) 12.

Division One, June 30, 1937.

*Wilson, Bundschu & Bailey* for appellant.

*Calvin, Vandeventer & Kimbrell* for respondent.

BRADLEY, C.—Action for slander. The jury returned a verdict in favor of plaintiff for actual damages, $1000, and for punitive damages, $500, and judgment was entered upon the verdict. Motion for

new trial was denied, and defendant appealed to the Kansas City Court of Appeals, where the judgment was affirmed (100 S. W. (2d) 341), but that court deeming its decision in conflict with the decision of the Springfield Court of Appeals in Gust v. Montgomery Ward & Company, 229 Mo. App. 371, 80 S. W. (2d) 286, certified the present cause to this court. [See Const., Amendment 1884, Sec. 6.]

The Court of Appeals correctly stated the case, which statement we adopt, and it is :.

"The petition alleged that plaintiff was an extra clerk in the store of the defendant in Kansas City, Mo.; that on March 3, 1934, she, through mistake, took from said store a coat, the property of another employee of the defendant; that on March 7, 1934, she learned that she had taken said coat; that she thereupon informed Mrs. Boone, defendant's employee, of the fact, and that she would bring the coat to the store; that thereupon plaintiff returned the coat to the defendant and was directed by Mrs. Boone to take it to the office of Harry C. Johns, another of defendant's employees; that she went to the office of Johns, stated to him the facts concerning the taking of the coat, to which Johns replied: 'It could not have been a mistake; you knew it was not your coat. Why did you take it? If it had been a mistake, you would have returned it immediately. You simply stole that coat, that's what you did.' And that Johns falsely, wantonly, and maliciously spoke said words in the immediate presence and within the hearing of other persons. The answer denied generally and specifically the speaking of the words; alleges the relationship of plaintiff and defendant; that plaintiff removed a lady's coat from the place where employees' coats were usually stored during working hours; that said coat was the property of one Mrs. Craig, defendant's employee; that the loss of the coat was reported to Harry C. Johns, whose duty it was to investigate and handle such matters; that Johns undertook to find the missing coat. And 'whether the same had been taken and removed through willful intention to convert the same to her own use, and unlawfully deprive the owner of the use thereof or whether the said coat had been removed through mistake or through negligence and carelessness, and the defendant alleges that whatever words were in fact uttered by the said Johns at the said time were uttered by him in good faith and without malice toward the plaintiff and while the said Johns was engaged in the investigation of the loss or removal of said coat; that the said Johns was engaged in and charged with the protection of the property of defendant and its employee, and that he had a bona fide duty or interest in the subject matter of said conversation and that whatever utterance was made by him was made in good faith in the performance of such duty and that the plaintiff had a corresponding

interest with relation thereto and that by reason thereof the same constituted a privileged communication and the defendant is not liable to the plaintiff therefor.'

''The evidence shows that plaintiff was an extra clerk in defendant's store in Kansas City, Mo.; that about 9 o'clock P. M., on Saturday, March 3, 1934, she, through mistake, took from defendant's store a coat belonging to defendant's employee, Mrs. Craig; that in a few minutes thereafter Mrs. Craig found that her coat was missing and reported the fact to the defendant's timekeeper, Mrs. Boone, and to the defendant's house detective, Harry C. Johns. The plaintiff, on Tuesday night, March 6, 1934, learned that she had taken a coat which did not belong to her. On Wednesday morning, March 7, she told Mrs. Boone over the telephone that she had taken the coat of another by mistake and that she would bring the coat to the store. Thereupon plaintiff returned the coat to defendant's store and was directed by Mrs. Boone to take it to the office of Harry C. Johns. Plaintiff went to the office of Johns and said to him: 'Good morning, Mr. Johns. Here is the coat. I am awfully sorry. It was a mistake.' That thereupon Johns jumped at her, pointed his finger at her and spoke the words charged in the petition. That at the time said words were spoken a man stood so close to plaintiff that she could have touched him, and that other persons were within hearing. Following the conversation between plaintiff and Mrs. Boone over the telephone the latter reported to Johns that she had been informed that a young lady had taken the wrong coat and that she would bring it in the next day. Johns replied: 'Well, when she brings it in refer her to me, because I have a coat in the office that is probably hers.' Johns testified to the effect that when plaintiff came to the office that he asked her whether or not the coat he had in his office was her coat, and the plaintiff said it was. In the testimony of Johns is the following:

'' 'Q. Why did you say ''certainly not,'' when she (plaintiff) asked you if you thought she was trying to steal the coat? A. Because there was no thought in my mind, when the coat came back, that it was an intentional theft—there was no thought in my mind that it was—Q. (Interrupting). Intentional? A. Yes, sir—when she returned the coat, because we didn't know who had it. We had no way of telling. . . . Q. Did you make the statement that she said you made? A. Absolutely not. Q. Did you charge her with theft? A. No, sir—certainly not? Q. Did you, in any manner insinuate to her that you felt that she had stolen the coat? A. No, sir—in no manner whatever.'

''At the close of plaintiff's evidence the defendant requested the court to direct verdict in its favor. The request was refused. The defendant again at the close of all of the evidence requested a like

instruction. The request was refused. The defendant insists the refusal of each of said requests was error. If the last request were correctly ruled, then' the first needs no attention. It is the defendant's theory that the defamatory words spoken by Johns were qualifiedly privileged; that the occasion was one of privilege; and that the words were spoken in good faith and without malice."

Error is assigned on the refusal of a demurrer to the evidence at the close of the whole case, on the giving and refusal of instructions, and on an alleged excessive verdict.

The demurrer to the evidence is based primarily on the contention that the language complained of was qualifiedly privileged. In considering the demurrer we, of course, accord to plaintiff's evidence absolute verity and disregard that of defendant, except that consistent with plaintiff's case and which may aid her case. Since we consider presently the subject of qualified privilege in the assignment on plaintiff's Instruction No. 1, it is sufficient to here say that there is no support for the demurrer at the close of the whole case. Also, it is contended that there was no substantial evidence that the complained of language was published, that is, spoken in the presence and. hearing of a third person or persons. It is not necessary to detail the evidence on this point. The evidence was sufficient to make such question an issue for the jury.

Is plaintiff's Instruction No. 1 erroneous? This instruction directed a verdict for plaintiff, if the hypothesized facts were found. The instruction is challenged on the ground that it ignored the subject of privilege and failed to require a finding as to the existence of actual malice. This criticism is based on the premise that, under the facts, the language used was qualifiedly privileged, and that plaintiff was required to prove actual malice and that the jury should have been required to so find. A qualified privilege generally relates to private interests and comprehends "communications made in good faith, without actual malice, with reasonable or probable grounds for believing them to be true, upon a subject matter in which the author of the communication has an interest, or in reference to which he has a duty, public, personal, or private, either legal, judicial, political, moral, or social, made to a person having a corresponding interest or duty. Briefly stated, a qualifiedly privileged communication is a defamatory communication made on what is called an occasion of privilege without actual malice. As to such communications there is no civil liability." [36 C. J. 1241; Lee v. Fuetterer Battery & Supplies Co., 323 Mo. 1204, 23 S. W. (2d) 45, l. c. 60.]

The alleged slander was a communication relating to a suspected crime, therefore, the language complained of, in view of Johns' duty and plaintiff's relation to the suspected crime, was qualifiedly privileged, if made in good faith. [36 C. J., p. 1042,

sec. 206; Lee v. Fuetterer Battery & Supplies Co., 323 Mo. 1204, 23 S. W. (2d) l. c. 60; Butler v. Freyman, 216 Mo. App. 636, 260 S. W. 523; Montgomery Ward & Co. v. Watson (C. C. A. 4th), 55 Fed. (2d) 184; Kroger Grocery Co. v. Yount (C. C. A. 8th), 66 Fed. (2d) 700.] Because of the privileged character of the occasion and the language, the burden was on plaintiff to show actual malice (if Johns spoke in good faith), and to submit such issue to the jury, unless defendant, by its evidence, relieved plaintiff of such duty. [Holmes v. Royal Fraternal Union, 222 Mo. 556, 121 S. W. 100; Wagner v. Scott, 164 Mo. 289, 63 S. W. 1107.] Hence, the assignment on Instruction No. 1 depends on whether or not, under the situation, defendant is in a position to complain about the alleged omission from Instruction No. 1. The Court of Appeals held that Instruction No. 1 was not erroneous and disposed of the assignment on two theories, first, that there was no question of privilege in the case (at the close of all the evidence), and second, that every requisite of malice was submitted. ██ It is not necessary to deal with the second reason given by the Court of Appeals. The point is: Was the question of privilege an issue when the case went to the jury? If so, and that issue was not submitted, then Instruction No. 1 was erroneous. As appears above, Johns unequivocally admitted that he had no thought in his mind that plaintiff stole the coat. If he had no such thought, but notwithstanding, charged plaintiff with being a thief, there can be no good faith on his part in so charging, and absent good faith, there can be no question of privilege, and if there was no question of privilege, then the omission from Instruction No. 1 was not error. [Wagner v. Scott, supra; Warren v. Pulitzer Publishing Co., 336 Mo. 184, 78 S. W. (2d) 404; Mock v. American Ry. Express Co. (Mo. App.), 296 S. W. 855; Conrad v. Allis-Chalmers Mfg. Co., 228 Mo. App. 817, 73 S. W. (2d) 438.]

In Wagner v. Scott, supra, the court used this language: "But, in deciding this question (of privilege), the conditions on which it is to be held to be privileged must necessarily be assumed; that is, it must be taken for granted that the publication was believed, by the party who made it, to be true, and that it was made bona fide; because, if these elements are found to be wanting, then the jury would be authorized to infer malice." And in Warren v. Pulitzer Publishing Co., 336 Mo. 184, 78 S. W. (2d) 404, l. c. 412, there is language applicable: ". . . since there is no right to knowingly spread false facts about any one, there can be no question of privilege to do that."

We do not deem it necessary to pursue further the assignment on Instruction No. 1. In view of Johns' admission that he "had no thought" that plaintiff had stolen the coat, when he so charged her, according to plaintiff, there can be no question of privilege, and the complained of omission from Instruction No. 1 was proper. In this

situation there was no question left for the jury, except the question as to whether or not Johns charged plaintiff with stealing the coat.

Defendant assigns error on the refusal of its requested instructions F, G, H, I and J. Each of these instructions would have submitted the question of privileges, which, as we have ruled, was not in the case when it went to the jury, and these instructions were properly refused.

▇ ·Was the verdict excessive? As appears above, the jury found actual damages in the sum of $1000, and punitive in the sum of $500. Plaintiff was twenty years old at time of alleged slander. Her evidence is about this: "I went into his (Johns') office and said, 'Good morning, Mr. Johns.' He said, 'Yes.' I said, 'Here is the coat; I am awfully sorry; it was a mistake.' That is as much as I got to say. He jumped at me and pointed his finger at me and said, 'It could not have been a mistake; you knew it was not your coat. Why did you take it; you simply stole that coat; that is what you did; if it had been a mistake you would have returned it immediately.' He got up and walked over and jerked my coat off the hanger and threw it on my arm, and he snatched the other coat from me. I began crying, because it hurt me very much, by talking to me in that tone of voice. I asked him, 'Will you tell me the lady's name? I want to tell her I am sorry', and in a very loud tone of voice—he became very angry at me—and he said, 'Go home and mind your own business. . . . ' As I left the office I had my head down, and I was crying a bit, and I brushed against this gentleman (a man standing near open door of office and within arm's length of plaintiff during whole conversation between plaintiff and Johns), and I turned around and said, 'Pardon me.' . . . There was a number of employees around the time clock (outside of office, but within 8 feet thereof); I don't recall their names, but I was conscious of their being there. . . . It hurt me very much. I was hurt to the quick, and it upset me terribly for some time."

"Where the words published are in themselves actionable *per se,* the mental suffering occasioned by the publication of the defamatory words may be taken into consideration always for the purpose of estimating general and compensatory damages. The mental suffering must be the direct, immediate, and the proximate effect of the publication, and not mental suffering caused by the mere accusation itself." [37 C. J., sec. 568, p. 117; Brown v. Knapp & Company. 213 Mo. ·655, 1. c. 696, 112 S. W. 474.] "It is not necessary, in order to recover general damages for words which are actionable *per se,* that the plaintiff should have suffered any actual or constructive pecuniary loss. In such action, the plaintiff is entitled to recover as general damages for the injury to his feelings which the libel of the defendant has caused, and the mental anguish or suffering which

he had endured as a consequence thereof.'' [Brown v. Knapp & Company.] Also, it is said in the Brown case (213 Mo. l. c. 697, 112 S. W. 474): ''The question of damages for a tort, especially in a case of libel or slander, is peculiarly within the province of the jury, and unless the damages are so unconscionable as to impress the court with its injustice and thereby to induce the court to believe that the jury were actuated by prejudice, partiality or corruption, it rarely interferes with the verdict.'' [See, also, Henderson v. Cape Trading Co. et al., 316 Mo. 384, l. c. 397, 289 S. W. 332, l. c. 337; Cotton Lumber Co. v. LaCrosse Lumber Co., 200 Mo. App. 7, l. c. 24, 204 S. W. 957, l. c. 960.]

Neither the trial court nor the Court of Appeals found reason to interfere with the amount of the verdict, and we do not.

A good deal is said in plaintiff's brief about the opinion in the Gust case (80 S. W. (2d) 286) by the Springfield Court of Appeals, and it is suggested that some of the rulings in that case should be overruled. It is said of the Gust case in plaintiff's brief in the present case: ''The decision of the Springfield Court of Appeals is wrong in holding that the language used was not wanton, reckless, and careless, and beyond any qualified privilege that might have been invoked. Whether the language used was disproportionate and violent, so as to destroy the privilege, was a question of fact for the jury and, yet, the court in its opinion, held that the words spoken were not wanton, reckless, and careless to the extent of destroying the qualified privilege, if any such privilege existed under the facts.''

Whatever the correctness of the ruling may be in the Gust case, we think it clearly distinguishable from the present case, in that, in the Gust case, the evidence did not show that Irene Hoffman (the alleged offending employee) made the charge of theft against the plaintiff in that case, when she (Irene Hoffman) had no thought at the time that the plaintiff was guilty. In the present case, the employee, Johns, admitted, as appears, supra, that he had no thought that plaintiff was guilty, yet he, according to plaintiff's case charged her with being a thief. We neither approve nor condemn the opinion in the Gust case. We merely distinguish it from the present case.

The judgment should be affirmed, and it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.