## COMBES v. MONTGOMERY WARD & CO.

No. 7462.  Decided February 26, 1951.  (228 P. 2d 272.)

See 53 C. J. S. Libel and Slander, sec. 18. Conditional privilege as affected by communication with defendant's employees, see note 166, A. L. R. 114. See also, 33 Am. Jur. 178.

*William J. Cayias, E. D. Hatch,* Salt Lake City, for appellant.

*Critchlow, Watson & Warnock, Salt Lake City,* for respondent.

CROCKETT, Justice.

The plaintiff was discharged from his job with the defendant company on April 7, 1949, and this is an action for slander arising out of the events surrounding that discharge. At the trial in the court below, after the presentation of all the evidence, the court ruled that the statements complained of were privileged communications and that there was no actual malice, and directed a verdict for the defendants, no cause of action. The appeal is from that ruling.

The plaintiff's employment with Montgomery Ward & Company was in the garage department adjacent to the rear of its main store in Salt Lake City; the only other employee working in the garage with him was a Mr. Marrelli who will be further referred to herein. At about 10 o'clock in the morning of the day in question, the plaintiff was approached by a Mr. Barton, a representative of the Willmark Service System. This Willmark Service System is an organization used by many of the larger stores to spot-check employees as to honesty, integrity and compliance with company rules and procedures. This is done by having representatives of the Willmark Company act as shoppers in the various stores to be checked, and then reporting to the store managers the results of their investigation.

Mr. Barton purchased two inner tubes from the plaintiff, paying for them the sum of $1.50 in marked money.

The money was never put in the cash register as a sale, and in fact was never thereafter located. Plaintiff's explanation as to what happened to the money and why it was never rung up on a cash register was that the register which he used in the garage had not yet been checked from the previous day's sales, and that he was not allowed to ring up sales until the register had been checked; and, also, that his instructions from Mr. Billis, a salesman who worked inside the store, were that he should bring the money on sales of used tubes to the main store to be rung up by Billis, on a register there. He testified that he was extra busy on that day, and so he placed the money in a tin box situated beside the cash register in the garage and that he did not thereafter see the money again. During the course of the day, the tape from the garage cash register was taken into the store and checked, and that of the register operated by Mr. Billis was also checked, and upon finding no sale of $1.50 rung up on either register plaintiff was called in and questioned by Mr. Barton.

Thereafter, Barton called in Mr. Marrelli, the other garage employee, and asked him some questions about the matter. Marrelli was told about there being money missing and was asked to allow an inspection of his money, which he did. He was asked concerning the plaintiff's honesty and returned to his work. Mr. Billis was then called in for the same purpose and was questioned as to the practice with regards to the sale of used tubes, whether he knew anything about the missing $1.50, and also concerning the honesty of the plaintiff. As each man came out of the office, Mr. Kremmen, the store manager, spoke with him and cautioned him not to mention the matter to anyone else.

At the end of the work day, plaintiff was discharged. The reason later given him in writing was that he had failed to follow company rules and procedures in handling company money. It is upon these communications to Mar-

relli and Billis concerning plaintiff's honesty and the loss of the $1.50 that the plaintiff's complaint is laid.

Plaintiff complains that the trial court erred in striking numerous paragraphs from his complaint. In its original form, it contains a recitation of substantially every evidentiary fact which the plaintiff brought out at the trial. Upon motion to strike, the complaint was justifiably and properly tailored by the court to make it conform to the requirements of pleading as set out in Rule 8-A of the recently adopted Utah Rules of Civil Procedure, which states that a party seeking relief shall set forth: "(1) A short and plain statement of the claim showing that the pleader is entitled to relief;  *  *  *" which certainly was not intended to necessitate more detail in pleading than the former statutory rule, Sec. 104—7—2, U. C. A. 1943, which required the complaint to be in "ordinary and concise language." See article on "New Utah Rules" by Mr. Justice LESTER A. WADE, Utah Law Review, No. 1, Vol. 2, Feb. 1950. There was no error in granting the motion to strike. Plaintiff was not prevented at the trial from proving anything within the issues presented by his original complaint.

The defendant's first line of defense was their insistance that they were not responsible for the acts of Barton. It is apparent that Barton did not come there to do this checking just accidently or as a volunteer, although admittedly he was not a regular employee of the defendant company as its other clerks were. He was obviously hired to perform a service for defendant company. The conduct complained of was all within the scope of furthering that purpose so the company was responsible for his actions in so doing, and is entitled to have him considered as representing its interests, and thus with a legitimate right to protect them.

Defendant next contended that the utterances were not

slanderous. The trial court took the view that taking the circumstances all together, that is, the loss of the $1.50 from that department, the questioning of Billis and Marrelli concerning it, the asking them about plaintiff's honesty, together with the fact that the plaintiff was discharged at the end of the day, would impute dishonesty to the plaintiff and amount to slander per se. With this conclusion of the trial court, we also agree. It is not only the words used, but their import in the light of all the surrounding circumstances that determines whether or not they are slanderous.

Notwithstanding the fact that the trial court rejected defendant's contentions referred to in the two paragraphs next preceding, he directed a verdict for defendant against plaintiff on the following grounds:

(1) That the statements were privileged, and

(2) That there was no evidence of actual malice so as to remove the privilege. These two questions are the serious ones presented for review here.

First, we refer to the problem of whether the court properly determined that a conditional privilege existed. Where the facts regarding the circumstances of publication are substantially without dispute, as here, the existence of a conditional privilege is a question for the court, *Restatement of Torts,* Sec. 619, *Hales* v. *Commercial Bank of Spanish Fork,* 114 Utah 186, 197 P. 2d 910, 913. If there is any dispute about the facts, they are to be determined by the jury, *Newell, Slander and Libel,* 4th ed. Sec. 395.

The *Hales* case just mentioned approves and applies the rule stated in the *Restatement of the Law of Torts,* Sec. 594, p. 242:
"An occasion is conditionally privileged when the circumstances induce a correct or reasonable belief that

"'(a) facts exist which affect a sufficiently important interest of the publisher, and

"'(b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest.'"

A case quite similar to the instant one involving employer and employee is *Harrison* v. *Garrett,* 132 N. C. 172, 43 S. E. 594, 596, wherein the court, referring to a situation of conditional privilege factually like ours, said as follows:

"* * * any communication between employer and employee is protected by this privilege, provided it is made bona fide about something in which (1) the speaker or writer has an interest or duty; (2) the hearer or person addressed has a corresponding interest or duty; and provided (3) the statement is made in protection of that interest or in the performance of that duty. There must also be an honest belief in the truth of the statement. When these facts are found to exist, the communication is protected by the law, unless the plaintiff can show malice on the defendant's part; the burden in this respect being upon the plaintiff."

There is no doubt about the fact that Barton had an interest in protecting the property of defendant and there was certainly reasonable ground for apprehension that someone was misappropriating it, so Barton had a right and a duty to make appropriate inquiry of any proper person.

As indicated in the foregoing quotation, for the purpose of safeguarding against too widespread, careless or ill-advised inquiry under the protection of the cloak of conditional privilege, the law requires that there also be a proper interest on the part of the one to whom the inquiry is made. This subject is covered under the comments of (g) and (h) on clause (b) of the Rule 594 from the *Restatement of Torts* referred to above:

"(g) Under the rule stated * * * * it is further necessary that the publication be made to a person, who, if the defamatory matter be true, may reasonably be expected to be of service in the protection of the interest. The fact that the recipient is under a legal or moral duty to render aid is ordinarily enough to justify the publisher in expecting assistance

from him * * * *. The fact that decent people ordinarily assist others * * * is enough to justify the communicaton * * *.

"It is not necessary that the recipient actually have the power or ability to assist the publisher * * * *.

"(h) * * * * an owner of property may communicate his reasonable belief that it is in danger of theft or harm to his employee or a police officer since such persons have a legal duty to assist him in the protection of his property interests * * * *."

The substance of these rules is recognized by enactment into the statutes of this state. Sec. 103—38—8, U. C. A. 1943 provides that:

"A communication made to person interested in the communication by one who is also interested, or who stands in such relation to the former as to afford a reasonable ground for supposing his motive innocent, is not presumed to be malicious, and is a privileged communication."

and to the same effect is Sec. 62—2—3 (3), U. C. A. 1943. It is appreciated that these statutes deal with libel, not slander. The first refers to criminal libel, the second to newspapers. They have no application to the instant case, yet it is worthy of note that a similar privilege is provided for in our statutory law.

From the facts shown, both Marrelli and Billis were persons Barton not only properly could, but had to question in pursuing his inquiry as to what had become of this particular money which he had given to the plaintiff. The plaintiff's own testimony showed that these men were the only other ones who might have had access to this money under the procedures normally followed. Both of these employees either did have or should have had an interest in protecting the employer's property which had been lost. The trial court correctly advised counsel of his ruling upon this question as a matter of law, as evidenced by the following occurrence during the examination of the witness, Marrelli:

"Q. Did you have any interest in any employee as to whether or not he was honest? A. No.

"Counsel. We move to strike the answer.

"Court. Well, the motion to strike is granted. This matter of interest * * * is a matter for the court and not for the jury * * *. As a matter of law, I think they have that interest, and it wouldn't be for the witnesses to say that they had none just because they might not care a hoot what happened."

Supporting this idea is the declaration of the court in the case of *Montgomery Ward & Company* v. *Watson*, 4 Cir., 55 F. 2d 184, 187, as follows:

" * * * It is in the interest of good morals as well as of sound business that such investigations be conducted; and an employer should not be penalized for communications made to his employees supposed to have knowledge of such matters, where they are made in good faith and for the honest purpose of discovering the truth or of protecting the business."

In *Gardner* v. *Standard Oil Co.*, 179 Miss. 176, 175 So. 203, 205, the manager of the plant made statements to other employees to the effect that a company truck driver had stolen gasoline. Said the court:

" * * * The slanderous statements uttered by Mattox to the witnesses, Ashe and Davis, were quasi-privileged. These alleged defamatory statements were uttered by Mattox while engaged in his own and in his principal's business as manager and the only person in Tupelo connected with that business and in charge thereof. They were uttered in an effort to protect the property of his principal and preserve it from theft or embezzlement, and he was accountable to his principal therefor. Relative thereto, he had an interest and a duty. Davis and Ashe were employees and likewise had a duty and an interest relative to the owner's property."

See also: *Hall* v. *Rice*, 117 Neb. 813, 223 N. W. 4, 78 A. L. R. 1421; *McKenna* v. *Mansfield Leland Hotel Co.*, 55 Ohio App. 163, 9 N. E. 2d 166; *Campbell* v. *Willmark Service System, Inc.*, 3 Cir., 123 F. 2d 204; *Reliance Mfg. Co.* v. *Graham*, 181 Miss. 549, 179 So. 341; *Johnson* v. *Rudolph Wurlitzer Co.*, 197 Wis. 432, 222 N. W. 451; and *Hearn* v. *Ostrander*, 194 N. C. 753, 140 S. E. 724.

From the foregoing discussion of the facts and the law, it is plain that the questioning was done under conditional privilege.

Now, to consider the problem of malice: There is disagreement between counsel as to whether plaintiff pleaded

malice at all. The plaintiff did plead that the statements made were untrue and therefore made with malice. Strictly speaking, this is only pleading the malice which is implied in every slanderous publication but is not a pleading of the actual malice which is necessary to remove conditional privilege. But we set aside the question as to whether or not the plaintiff pleaded malice sufficiently to permit him to show actual malice if it had existed, in order to dispose of the plaintiff's contention regarding that matter on the merits.

It should be borne in mind that there is a distinction between the malice which is implied from every defamatory publication and the actual malice which is necessary to remove a conditional privilege, the privileged communication being an exception to the rule that every such defamatory publication implies malice; *National Standard Life Ins. Co.* v. *Billington, Tex.* Civ. App., 89 S. W. 2d 491 at page 493, states a definition of this type of malice which has been used and approved by numerous courts:

> "This kind of malice . . . which overcomes and destroys the privilege, is, of course, quite distinct from that which the law, in the first instance, imputes with respect to every defamatory charge, irrespective of motive. It has been defined to be an 'indirect and wicked motive which induces the defendant to defame the plaintiff.'"

Where the conditional privilege exists, the defendant is protected unless plaintiff pleads and proves facts which indicate actual malice in that the utterances were made from spite, ill will or hatred toward him and, unless the plaintiff produces such evidence, there is no issue to be submitted to the jury, *Speilberg* v. *Kuhn & Brother Co. et al.*, 39 Utah 276, 116 P. 1027; *Williams* v. *Standard Examiner Pub. Co.*, 83 Utah 31, 27 P. 2d 1. The law concerning this principle is well stated by the court in the case of *Wagner* v. *Scott*, 164 Mo. 289, 63 S. W. 1107, where the court, quoting from *Newell, Slander and Libel*, says at page 1111:

"The jury, however, will be the proper tribunal to determine the question of express malice where evidence of ill will is forthcoming; but if, taken in connection with admitted facts, the words complained of are such as must have been used honestly and in good faith by the defendant, the judge may withdraw the case from a jury, and direct a verdict for the defendant."

See also *Newell, Slander and Libel,* 4th ed. Sec. 395.

A review of the record fails to show any evidence which was either presented or proffered from which actual malice could be found. From anything that appears in the evidence, the investigation was carried on in a business-like and courteous manner, without any undue notice being given to it. There were no outright accusations of theft or dishonesty, and no threats nor any unnecessary unpleasantness. The whole examination into the disappearance of the money in that department and the suspicion as to the plaintiff seemed to be a bona fide inquiry about the facts and circumstances. It was properly limited to those persons who would be closely concerned with the transaction and the questions did not go beyond what was reasonably necessary and appropriate to the investigation.

It follows that the trial court did not err in holding that there was no showing of malice so as to make a question for submission to the jury.

Plaintiff also charges error in regard to certain adverse rulings on evidence. To work over each of these contentions would be of no value and would unduly extend this opinion. We have considered them and it appears that because of the views we have expressed herein relating to the main issues involved, there could be no prejudice to the plaintiff's cause by the adverse rulings on evidence about which he complains.

Judgment is affirmed.

Costs to respondent.

WADE, LATIMER and McDONOUGH, JJ., concur.

WOLFE, Chief Justice (concurring).

I concur.

Even if the Willmark Service System were an independent contractor and therefore in a different relationship than that of employee of the defendant or an agent of sorts, which is the relationship usually implied from the use of the term "hired," the defendant would not be absolved from liability for slander committed by the independent contractor in the pursuance of the work it was entrusted to do for the defendant. If the type of work which the independent contractor was required to do necessitated the making of inquiries which would imply slander, the employer is not exonerated.

In my dissenting opinion in the case of *Stover Bedding Co.* v. *Industrial Comm.*, 99 Utah 423, 107 P. 2d 1027, 134 A. L. R. 1006, I attempted to explain at length, if not with clarity, that historically the concept of independent contractor was intruded into the law to assuage the harshness of the doctrine of "let the principal respond"; that the law came to see that it was not fair to charge the employer with the delicts of the contractor in those cases where the contractor was employed to build some article such as a boat or a structure or to do a repair job for another and who was responsible to said employer only for the furnished object or structure or repair job in its finished condition—that is an end result—without direction or supervision by such employer as to means and methods and whose trade was to build and who was therefore more like a merchant selling the object or the structure or finished job than a servant; that the law gave to such relationship the name of independent contractor and refused to apply the doctrine of respondeat superior to such relationship.

Certain it is that the matter of discovering dishonesty among one's employees or servants is peculiarly the business of the master or employer; hence, however independent the agent who takes a contract to perform that function for the employer may be in the means and method of ferreting out dishonest conduct among the employer's em-

ployees, there is no reason for assuaging the harshness of the doctrine of respondeat superior in such case for it is the type of function which is peculiarly the employer's and any delict occurring in the course of performing it cannot be delegated to another.

It was, as said in the main opinion, conduct necessary to further the work for which he was employed and the company was responsible for his actions in that respect. I add this observation because the term "hired" is a connotation usually used in connection with the establishment of a master and servant relationship. I want to point out that even though the work is performed by an independent contractor the responsibility remains with the employer of the independent contractor.